**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0420n.06
Filed: May 20, 2005

**No. 03-4247**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| NATALYA BOBRYVETS, | ) |
| | ) |
| Petitioner, | ) |
| | ) ON PETITION FOR REVIEW |
| v. | ) OF AN ORDER OF THE |
| | ) BOARD OF IMMIGRATION |
| ALBERTO GONZALES, ATTORNEY GENERAL, | ) APPEALS |
| | ) |
| Respondent. | ) |

Before:      **BOGGS**, Chief Circuit Judge; **ROGERS**, Circuit Judge; and **SHADUR**, District Judge.[1]

**Shadur, District Judge.** Natalya Bobryvets ("Bobryvets"), a native and citizen of Ukraine, attempted to enter the United States from Mexico with a false re-entry permit on April 4, 2000, but she was apprehended by the Immigration and Naturalization Service ("INS"). Initiation of removal proceedings followed shortly thereafter. During those proceedings Bobryvets conceded removability but sought to remain in the United States by filing applications for asylum, withholding of removal and protection under the Convention Against Torture.

As the basis for her requested relief, Bobryvets described a sequence of events that ultimately led her to flee her home country. Unfortunately no straightforward account of those events is possible here, because her story varied substantially from her port-of-entry interview to

---

[1] The Honorable Milton I. Shadur, United States District Judge for the Northern District of Illinois, sitting by designation.

her asylum application to her hearing testimony.

In general terms Bobryvets claims that her problems began shortly after she opened a small gift store.[2] She was visited by men who demanded protection money, and her initial compliance only led to further demands for larger and larger sums that she eventually could not afford. When she then refused to pay, the men attacked her and damaged her store. After that attack she sought advice from a tax inspector friend who told her to go to the police. But the police were of little help and recommended that she just meet the increased demands. And her decision to file a formal complaint with the police only produced additional problems: Three men (one of whom wore a police uniform) visited her store shortly thereafter, criticized her for filing the complaint and then beat her unconscious. Later her store was burned and she was abducted, beaten and raped by yet more visitors demanding payment of protection money. Finally Bobryvets fled to Mexico to escape her ongoing mistreatment before attempting entry into the United States.

On March 12, 2002 an immigration judge ("IJ") denied Bobryvets's claims for relief and ordered that she be removed to Ukraine. Bobryvets appealed that decision to the Board of Immigration Appeals ("BIA"), which denied the appeal without opinion on August 28, 2003. Less than one month later Bobryvets filed a timely appeal in this court, seeking review of the

---

[2] What follows is Bobryvets's own version of events. For simplicity we omit the repetition of such qualifying language as "she alleges" or "she asserts" or "she claims" or the like, but the entire account must be read with that limiting understanding.

adverse decisions as to asylum and withholding of removal.[3]   As permitted by Fed. R. App. P. 34(a), the parties have expressly waived oral argument, and we unanimously agree that oral argument is not needed.  Having reviewed Bobryvets's claims and the record below, we AFFIRM the order of removal.

8 C.F.R. § 1003.1(b)(2) gives the BIA jurisdiction to consider appeals stemming from IJ decisions, and 8 U.S.C. § 1252[4] in turn provides this court with jurisdiction to review BIA decisions.  When as here the BIA simply affirms the IJ's decision without a written opinion, we review the IJ decision as the final administrative order (*Hasan v. Ashcroft*, 397 F.3d 417, 419 (6th Cir. 2005)).  And the scope of that review is quite limited, for it addresses a factually-based determination that an alien has failed to satisfy the burden of establishing eligibility for asylum or withholding of removal, and we can upset such a determination only if the evidence submitted by the alien demonstrates that "any reasonable adjudicator would be compelled to conclude to the contrary" (8 U.S.C. §1252(b)(4)(B)).

Two separate grounds were identified by the IJ as a basis for denying Bobryvets asylum.[5] First, the IJ noted numerous inconsistencies in Bobryvets's testimony and concluded that those

---

[3]  Because Bobryvets did not challenge the IJ's denial of protection under the Convention Against Torture in her opening brief, any objection she might have on those grounds is waived (or, more accurately, forfeited) (*Bickel v. Korean Air Lines Co.*, 96 F.3d 151, 153 (6th Cir. 1996)).

[4]  Further citations to Title 8 provisions simply take the form "Section--."

[5]  As noted, Bobryvets challenges the IJ's conclusions as to both asylum and withholding of removal.  But the remainder of this opinion will speak in terms of asylum alone, because "an alien who fails to qualify for asylum necessarily does not qualify for withholding of removal" (*Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005)).

inconsistencies rendered her not credible and therefore not eligible for asylum.  Second, the IJ

found that Bobryvets's claims, even if believed, would not entitle her to asylum because they did

not fit the statutory grounds for that relief.  We examine each ground in turn.

*Credibility*

Applications for asylum can be denied on the basis of a finding that the alien is not

credible, but the "adverse credibility finding must be based on issues that go to the heart of the

applicant's claims.  They cannot be based on an irrelevant inconsistency" (*Sylla v. INS*, 388 F.3d

924, 926 (6th Cir. 2004)(internal quotation marks omitted)).  Here the IJ identified some nine

inconsistencies, all of which Bobryvets claims are either reconcilable or irrelevant.  Although

some of those inconsistencies can indeed be reconciled, and although Bobryvets has offered

potentially believable explanations for some others, enough inconsistency remains in all events

to satisfy the "substantial evidence" threshold that applies to credibility determinations (*Yu v.

Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004)).  Examples of her inconsistencies include these:

1.      At her port-of-entry interview Bobryvets attributed her fear of persecution if returned to

        Ukraine to the fact that she owed $3000 to people who loaned her money to facilitate her

        escape.  But in her hearing testimony that same fear was attributed instead to her

        experience with the state authorities and her refusal to pay protection money.  Moreover,

        during the port-of-entry interview Bobryvets ascribed her decision to leave Ukraine to the

        lack of work there, rather than her later-advanced explanation that might have qualified

4

her for relief under the immigration laws.[6]

2.   In her hearing testimony Bobryvets described her previous employment as a nurse and indicated that she was terminated from that post for complaining about the fact that doctors at the hospital were receiving bribes.  But in the supporting affidavit accompanying her original asylum application, she claimed that she was laid off from her nursing job "for reasons unknown to me up until this day."

3.   In her asylum application Bobryvets made no mention of being beaten when she first refused to pay the sums demanded for protection.  Instead the application claimed only that the men broke a stand in the store before leaving.

4.   In her asylum application Bobryvets said that she regained consciousness in the middle of the road after her abduction, when a couple held a spirit for her to smell, and that she was bedridden for a month after her release from the hospital.  But in her later testimony she said that she regained consciousness in the hospital and that she eventually was forced to escape from the hospital due to her fear of the police.

5.   Bobryvets's original asylum application did not include any mention of a trip to see the police watch commander.  But in her hearing testimony she described such a trip and claimed that she observed one of the men seeking protection money greet the commander

_____

   [6] We have previously declined to decide whether inconsistencies between port-of-entry interviews and testimony at an asylum hearing can form the sole basis for an adverse credibility finding (*Yu*, 364 F.3d at 703 n. 4).  But such inconsistencies can certainly be used as a factor in arriving at such a finding where, as here, other evidence supports the notion that the alien is not credible (*id.*).

in a familiar way.

Those inconsistencies cannot be viewed as irrelevant to Bobryvets's claim for asylum, which rests on an assertion that she reasonably fears persecution if returned to Ukraine. Moreover, the new claims made during her testimony--that she had previously been terminated for complaining about corruption, that she was beaten after her first refusal to pay the demanded sums, that she was forced to flee the hospital to escape the police and that the police commander knew one of her extorters--at least arguably appear to be "attempts by the applicant to enhance [her] claims of persecution" (*Singh*, 398 F.3d at 402, quoting *Sylla*, 388 F.3d at 926).

In addition to inconsistencies in the evidence provided by Bobryvets, the IJ also relied on Bobryvets's failure to provide corroborating evidence of her persecution as a basis for the adverse credibility determination. Generally "[a]n applicant for asylum is not required to produce corroborating evidence of persecution" (*Pilica v. Ashcroft*, 388 F.3d 941, 954 (6th Cir. 2004)). But when such evidence could be reasonably expected--when it is "of the type that would normally be created or available in the particular country and is accessible to the alien, such as through friends, relatives, or co-workers"--failure to provide corroboration can be considered as a factor in assessing credibility (*Dorosh v. Ashcroft*, 398 F.3d 379, 383 (6th Cir. 2004)). Here Bobryvets claimed persisting injuries stemming from her attacks, but she did not produce any medical records to support that claim. Nor did she provide any supporting evidence from her father or her acquaintance the tax inspector, both of whom still live in Ukraine. It was reasonable for the IJ to expect corroborating evidence of that sort, and so its complete absence was an appropriate consideration in assessing her credibility.

Adverse credibility determinations are reversible only if "any reasonable adjudicator would be compelled to conclude to the contrary" (Section 1252(b)(4)(B); *see Yu*, 364 F.3d at 703). Because Bobryvets has not made a showing that the evidence on the record here compels the conclusion that she is credible, the IJ's conclusion on that score must be upheld.

### *Statutory Insufficiency*

As a second and independent basis for rejecting Bobryvets's bid for asylum, the IJ held that Bobryvets had not asserted facts sufficient to satisfy the statutory prerequisites for that relief. Section 1158(b)(1) instructs that successful applications for asylum must initially demonstrate that the alien qualifies as a refugee as defined by Section 1101(a)(42)(A), and that definition in turn identifies discrete grounds that can form the basis of a cognizable claim of persecution: the persecution (or well-grounded fear thereof) must be "on account of race, religion, nationality, membership in a particular social group, or political opinion" (*id*.; see also *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004)).

Though Bobryvets has claimed persecution, she has presented no evidence to substantiate persecution on account of any protected ground. In her brief Bobryvets suggests that refusal to accede to the demands of extortionists can constitute political expression if the basis for the refusal is a disagreement with the political goals of the extortionists. That is a clever if contorted argument, but it has no teeth in this instance because Bobryvets has not presented evidence that her refusal to comply was based on any such political stand on her part (or that her persecution was "on account of" that stand, a proposition that seems circular at best). To the contrary, Bobryvets's own testimony was that she paid the extortion money when the amount was

7

manageable, but that she refused to do so after higher amounts were demanded because she did not "have such amount" and so "could not pay it."

As for another possibility that Bobryvets now suggests--that her asylum claim fits the "membership in a particular social group" category--it too is negated by Bobryvets's own testimony about what actually took place. Her claimed "social group" appears to be women owners of small businesses. But even if that category of persons could qualify as a "social group" (a notion that strains the ordinary connotation of that term a good deal), that would not be enough--she would also have to demonstrate persecution "on account of" that membership (*see Marku*, 380 F.3d at 986). That Bobryvets has not done. No evidence has been presented to indicate that female small business owners were targeted for exceptional treatment. Instead Bobryvets testified that "everybody" paid the extortionists. Indeed, the afterthought nature of this claim is signaled by the fact that she did not even check membership in a social group in her original asylum application.

In short, all that Bobryvets has alleged is that she was subject to persecution in the form of criminal economic activity by others in her native Ukraine, and that the state acquiesced (or perhaps even participated to some extent) in that activity. If true that is lamentable, but it does not form the proper basis for a grant of asylum. Bobryvets is in the same position as someone who has failed to state a claim on which relief can be granted, and the IJ's denial of her claim on that basis was reasonable. Surely she has not submitted evidence "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution" (*INS v. Elias-Zacarias*, 502 U.S. 478, 484 (1992)).

8

## *Conclusion*

For Bobryvets to succeed in this appeal, she needed to show that both grounds given by the IJ were unsustainable. But based on our review of the evidence, neither ground supports reversal. We therefore AFFIRM the IJ decision (and hence that of the BIA).