**NOT RECOMMENDED FOR FULL TEXT PUBLICATION**
File Name: 10a0338n.06

No. 06-4063

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jun 03, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| ELISABETA PECI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | ON PETITION FOR REVIEW OF AN |
| v. | ) | ORDER OF THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| | ) | |
| ERIC H. HOLDER, JR., | ) | |
| Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |

Before: GILMAN and WHITE, Circuit Judges; and THAPAR, District Judge.[*]

**THAPAR, District Judge.** Elisabeta Peci, a native and citizen of Albania, asks us to review a decision of the Board of Immigration Appeals denying her application for asylum and withholding of removal. Because a reasonable adjudicator could find that Peci was not credible and did not satisfy her burden of proof and because, as a separate matter, her administrative hearing did not violate due process, we deny the petition for review. We also deny her motion to remand.

I.

Elisabeta Peci ("Peci") was born in Durres, Albania in 1958. Joint Appendix ("J.A.") at 67. She moved to Tirana, Albania with her husband and two children in 1987. *Id.* at 67-68. She started in

---

[*] The Honorable Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

politics in 1990 at the beginning of the Democratic movement. *Id.* at 68. She became a member of the Legality Party in 1993. *Id.* As addressed below, Peci gives differing accounts of her involvement with the Legality Party. The party advocates turning Albania into a monarchy. *Id.* at 69.

According to Peci, her family began receiving threats in 1997 and 1998 based on her involvement with the Legality Party. *Id.* at 70-71. They received threatening phone calls and papers under their door weekly and sometimes daily. *Id.* at 71. The events escalated in January 2001, when Peci's daughter was attacked on the street. *Id.* at 72. In February 2001, four individuals destroyed Peci's restaurant business. *Id.* at 72-73. They threatened Peci that she had to quit her activity or that they would make her "disappear." *Id.* at 73. Peci claims that she called the police after this incident and that they never came. *Id.* at 73-74. In December of that same year, four men robbed Peci while she was leaving her restaurant. *Id.* at 74-75. She recognized two of them from the February incident. *Id.* at 75. Afterwards she went to the police, but does not believe they filed a report. *Id.* at 75-76.

Worst of all, while she was traveling an hour and a half outside of Tirana in May 2002, a vehicle with three men in it pulled in front of Peci's car so that she could not drive. *Id.* at 77. After she got out of the car the men took her into the bushes and raped her. *Id.* at 78-82. She claims they threatened to make her disappear and said "this is your democracy." *Id.* at 79. A family doctor examined Peci though she did not go to the hospital. *Id.* at 84. Following the incident she stayed with family outside of Tirana. She then decided to go to the United States in August 2002. *Id.* at 87. She traveled on a visitor visa to Michigan, where one of her sisters lived. *Id.* at 88. While she was in the United States, Peci's husband and son—both still in Albania—reported that the threats continued. *Id.* at 89-92. For that reason, Peci decided to stay in the United States permanently. *Id.* at 102.

Peci sought asylum and withholding of removal in January 2003. *Id.* at 223-37. The United States began removal proceedings against her in March 2003, and she supplemented her asylum application in December 2003. *Id.* at 210-12. On February 15, 2005, Peci testified before Immigration Judge Elizabeth A. Hacker ("IJ"). *See id.* at 61-121. At the hearing, the IJ did not allow Peci to submit additional documents because the deadline to offer evidence had passed. *Id.* at 63-64, 112. Based on discrepancies between her testimony and her asylum application, the IJ found Peci's claim "unconvincing and not credible." *Id.* at 38-39. Alternatively, she found that even if Peci were credible and the threats were true, Peci did not connect the threats with her political activity as required for asylum. The IJ denied Peci's asylum application and petition to withhold removal.

On July 17, 2006, the Board of Immigration Appeals ("BIA") reviewed the IJ's factual findings for clear error. *Id.* at 4-7. The BIA concluded that Peci "is not credible and failed to establish eligibility for asylum." *Id.* at 6. It noted that Peci failed to submit evidence to corroborate her testimony. *Id.* The BIA also found that Peci failed to show a due process violation, because she did not allege any prejudice or link the alleged violation to the IJ's final decision. *Id.* at 6-7. For those reasons, the BIA affirmed the IJ's denial of Peci's petition. The denial became the final decision of the Executive Office of Immigration Review ("EOIR").

II.

Peci raises several arguments in her petition before us. While difficult to discern, it seems that Peci challenges the credibility finding, Pet. Br. at 39-46, and believes the IJ's prejudice violated Peci's due process rights, *id.* at 17-28. Further, Peci contends that the BIA should have admitted certain Legality Party documents that Peci submitted after the deadline. *Id.* at 51-54. She also argues that the IJ and the BIA distorted and disregarded the evidence before them to improperly deny her claim. *Id.*

-3-

at 37-38, 47-50. For the reasons explained below, these arguments lack merit and we deny Peci's petition for review.

A.

Where the BIA "issues a separate opinion, rather than summarily affirming the immigration judge's decision, we review the BIA's decision as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (citing *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007)). The IJ, acting on behalf of the Attorney General, may grant asylum to a person who can demonstrate an unwillingness to return to his or her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). All asylum claims begin with a threshold credibility finding, which we review under the substantial-evidence standard. *Hamida v. Gonzales*, 478 F.3d 734, 736 (6th Cir. 2007) (citing *Yu v. Ashcroft*, 364 F.3d 700, 703, 703 n.2 (6th Cir. 2004)).

Substantial evidence supports the BIA's ruling that Peci was not credible. In other words, Peci cannot show that the facts *compel* a reasonable adjudicator to find her testimony credible. *Yu*, 364 F.3d at 704 ("Although some of the IJ's grounds seem weak when the discrepancies are viewed in the context of the surrounding record, we cannot say that a 'reasonable adjudicator would be compelled to conclude to the contrary.'" (quoting 8 U.S.C. § 1252(b)(4)(B); citing *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992))). The BIA also correctly found that Peci failed to otherwise corroborate her claim. Together, lack of credibility and corroboration show that Peci failed to meet her burden of proof for asylum. *Vuktilaj v. Mukasey*, 277 F. App'x 545, 550 (6th Cir. 2008) ("In the final analysis, because the record does not compel a finding that Vuktilaj is credible and because he did not otherwise corroborate his claim, he has not met his burden to prove eligibility for asylum . . . .").

-4-

### 1. Credibility

The BIA pointed to several discrepancies on issues central to Peci's claim to support its finding that Peci lacked credibility. *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004) ("An adverse credibility finding must be based on issues that go to the heart of the applicant's claim."). First, the BIA identified Peci's inconsistent descriptions of the men who raped her as a crucial contradiction. J.A. at 5. In her asylum application, Peci stated that gangsters from the Socialist Party, who were connected with the Secret Police, raped her. *Id.* at 219. But at the hearing, she testified that she did not know who the men were at the time. *Id.* at 78-79. On cross-examination, she described the men who attacked her only as her "political opponents." *Id.* at 97. Notably, Peci's husband's statement to the police after he was threatened in August 2003 does not mention political motivation for the attacks at all. Further, he states that "unknown people" raped his wife. *Id.* at 200. Peci fails to explain when or how she came to know her attackers were members of the Socialist Party. The link between the attacks and her political opinions, central to her claim of political persecution, is missing.

Next, the BIA observed that Peci gave different accounts of her involvement with the Legality Party. *Id.* at 6. In her asylum application, she states only that she was a financial supporter of the party. *Id.* at 219. When asked specifically on the asylum application whether she held "any leadership or other positions," Peci responded simply that she had been a supporter since 1990. *Id.* at 215, 228. At the hearing, however, Peci testified that she was a high-ranking member of the Legality Party's ten-person Steering Committee for three years. *Id.* at 108-10. The Steering Committee reports directly to the Chairman of the Legality Party and sets policy positions. *Id.*

Additionally, Peci left the 1997 and 1998 threats out of her asylum application and raised them for the first time at the hearing. Although Peci did not need to "provide an exhaustive, detailed list of

-5-

all incidents of persecution in the asylum application," these significant omissions undermine her credibility. *See Vasha v. Gonzales,* 410 F.3d 863, 871 n.4 (6th Cir. 2005). Omissions particularly hurt Peci because she prepared her asylum application with the assistance of counsel. *Sylaj v. Gonzales*, 124 F. App'x 993, 995 (6th Cir. 2005) ("[T]he IJ rejected petitioner's explanation [for omissions in an asylum application] on the ground that petitioner had been represented by counsel when he completed his application."). Further, if "the inconsistencies in the instant case can be 'viewed as attempts [ ] to enhance [ ] claims of persecution,'" then they can also harm Peci's credibility. *Neziraj v. Gonzales*, 207 F. App'x 550, 557 (6th Cir. 2006) (quoting *Daneshvar v. Ashcroft*, 355 F.3d 615, 623 (6th Cir. 2004)); *see also Zhao v. Holder*, 569 F.3d 238, 249 (6th Cir. 2009). Painting herself as a more involved and widely known political figure, along with adding other threatening incidents, certainly enhance Peci's asylum claim. The BIA properly considered this late additional information as evidence of her lack of credibility.

In the petition before us, Peci could have explained the discrepancies and omissions that the BIA relied on in its decision. *See Kalaj v. Gonzales*, 201 F. App'x 345, 349 (6th Cir. 2006) (citing *Selami v. Gonzales*, 423 F.3d 621, 625 (6th Cir. 2005)). She did not. Thus, the agency's credibility determination is supported by substantial evidence. The BIA "sustain[ed] the Immigration Judge's credibility determination," that "the respondent failed to meet her burden of proof by providing consistent, credible testimony or a combination of credible testimony and corroborating evidence to substantiate her claim." J.A. at 4, 6. It did not reach the IJ's alternative conclusion that the persecution also lacked sufficient nexus to her political affiliation or activities. *Id.* at 6 ("Because we sustain the Immigration Judge's credibility determination, we need not consider the validity of the Immigration

Judge's alternative conclusion that the respondent's alleged persecution also lacked sufficient nexus to her political affiliation or activities.").

## 2. Lack of Corroboration

An adverse credibility finding—especially when coupled with a failure of proof as here—is sufficient to defeat an asylum claim. *See El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) ("For each claim here, El-Moussa bore a burden of proof that she could not meet unless the court credited her testimony. The adverse credibility finding thus provides an alternative ground for upholding the denial of asylum . . . ."); *Bobryvets v. Gonzales*, 132 F. App'x 602, 604 (6th Cir. 2005) ("Applications for asylum can be denied on the basis of a finding that the alien is not credible . . . .").[2] After the BIA found Peci incredible, the BIA also noted that Peci "failed to establish eligibility for asylum."[3] J.A. at 6. In support of this, the BIA correctly concluded that Peci produced no corroboration to prove that she was involved in the Legality Party.[4] *Id.* at 6.

---

[2] While in *Vuktilaj* we stated that "an adverse credibility finding alone will not defeat a claim for asylum," the same sentence continues on to explain that "it will undermine a claimant's efforts to meet his burden of proof-particularly when the claimant reasonably could have presented, but did not present, corroborating evidence to support the claim." 277 F. App'x at 559.

[3] *Gjyzi v. Ashcroft*, 386 F.3d 710, 715 (6th Cir. 2004)*,* is distinguishable from the present case. We noted in *Gjyzi* that "[i]t is difficult to conduct meaningful judicial review of the IJ's decision finding that an alien has 'failed to satisfy his burden of proof for withholding of removal' when there is no underlying determination of whether there was past persecution." *Id.* This holding, however, must be viewed in context. In *Gjyzi*, the IJ found that the petitioner was not credible and rejected his claims of past persecution. *Id.* The BIA reversed the credibility finding and upheld the denial of the asylum petition, but failed to explain its basis for the denial. *Id.* In contrast, the BIA here does not disturb the IJ's credibility finding; it simply declines to reach the alternate grounds for the IJ's decision. Unlike in *Gjyzi*, here the BIA included sufficient grounds—credibility and lack of corroboration—to deny the petition.

[4] At the eleventh hour, Peci attempted to submit a membership card and a letter from the Legality Party. J.A. at 63-64, 112. Because she missed the deadline to submit evidence, the IJ properly excluded the exhibits based on the local rule that all documents had to be submitted

"'[W]here it is reasonable to expect corroborating evidence . . . [t]he absence of such corroborating evidence can lead to a finding that an applicant has failed to meet her burden of proof.'" *Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004) (quoting *In re S-M-J-*, 1997 WL 80984, 21 I. & N. Dec. 722, 724-26 (BIA 1997)).[5] Peci testified that she has photographs with high-ranking party officials and that members of the Legality Party were aware of her persecution. J.A. at 110. We have noted that "supporting documentation must be provided only if it is of the type that would normally be created or available in the particular country and is accessible to the alien, such as through friends, relatives, or co-workers." *Dorosh*, 398 F.3d at 382-83 (internal quotations omitted). Peci testified that someone in Albania sent her documents for her claim, J.A. at 106, which means she still had access to this information. But she submitted no documentation of her Legality Party membership (until her late attempt at the hearing) because she did not think it was necessary. *Id.* The BIA rightfully rejected Peci's explanation that she did not think this evidence was important. *Id.* at 6. The form application specifically asked Peci to explain her political involvement; indeed, it is the very basis of her claim. Thus, it was reasonable to expect corroboration of Peci's Legality Party involvement, and the lack thereof shows that Peci failed to meet her burden. *See Vuktilaj*, 277 F. App'x at 550.

---

fourteen days prior to the hearing. *Id.* at 64-65; *see Cabrera-Ramos v. Gonzales*, 233 F. App'x 449, 453 (6th Cir. 2007) (IJs can set and enforce their own deadlines (citing 8 C.F.R. § 1003.31(c)). As a result, we cannot consider the corroboration evidence. *Fang Huang v. Mukasey*, 523 F.3d 640, 656 (6th Cir. 2008) ("[T]he court of appeals shall decide the petition only on the administrative record on which the order of removal is based." (quoting 8 U.S.C. § 1252(b)(4)(A))). We further address the exclusion in the due process analysis.

[5] The EOIR follows its own internal regulations and must follow binding BIA decisions. *Aburto-Rocha v. Mukasey*, 535 F.3d 500, 503 (6th Cir. 2008) (citing 8 C.F.R. § 1003.1(g)).

### 3. Peci's Other Evidence

Peci submitted other evidence purportedly supporting her persecution claim, which was not addressed by the BIA. J.A. at 47-51. But the BIA's opinion need not examine every piece of evidence in order to perform meaningful review. *Dorosh*, 398 F.3d at 383 (responding to the petitioner's argument that the BIA failed to address country reports by examining the country reports and finding that they supported the BIA decision). What is more, none of this additional evidence meaningfully supports Peci's claim.

Substantial evidence in the record supports the BIA's finding that Peci did not prove her eligibility for asylum. The State Department country profiles (for 2001, 2003 and 2004) show that Albania's political violence was declining. There were no reports of violence from the Socialist Party government against members of other parties during the time of Peci's troubles. *See* J.A. at 160 ("With the Socialist Party currently leading a coalition government, it is highly unlikely in today's circumstances that many applications will have credible claims to political persecution."). A newspaper article documenting the threats against her family does not mention her political involvement. *Id.* at 263. The other supporting documents not addressed by the BIA were: a doctor's report, *id.* at 190-91; statements from the people who helped Peci after her attack, *id.* at 194-95; Peci's husband's police report, *id.* at 200; and statements from the family members Peci lived with in 2002, *id.* at 203. Although these documents corroborate that Peci was attacked and her family threatened, none of them mentions political activity of any kind. Hence, the BIA did not err in finding that Peci did not prove her eligibility for asylum.

The fact that the BIA did not rule on the IJ's alternative ground for denying asylum is of little moment. As discussed, the IJ found Peci incredible. *Id.* at 39. The IJ then gave an alternative ground,

which assumed that even if she was credible the claim would be denied. The BIA did not reach this claim because it affirmed the IJ's finding that Peci was not credible, rejected her corroborating evidence, and found that Peci "failed to establish eligibility for asylum." Consequently, the BIA did not need to analyze Peci's claim assuming she was credible when she was not. Moreover, because we review the BIA's record, not the IJ's, that claim is not before this Court. Since we affirm the credibility basis for the denial, we need not assume that Peci is credible and get to her fear of persecution.

In addition to asylum, Peci filed a petition for withholding of removal under 8 U.S.C. § 1231(b)(3)(A). To meet the burden for withholding of removal, Peci must show there is a clear probability that she will face a threat to life or freedom in Albania. *Liti v. Gonzales*, 411 F.3d 631, 640-41 (6th Cir. 2005) (quoting 8 C.F.R. § 1208.16(b)(2)). This standard is more difficult to meet than proving a well-founded fear for asylum. Because Peci has failed to establish her eligibility for asylum "it therefore follows that [s]he cannot satisfy the more stringent standard for withholding of [removal]." *Koliada v. INS*, 259 F.3d 482, 489 (6th Cir. 2001).

B.

Peci also argues that her asylum claim should be remanded because, at the hearing, her due process rights were violated. "Fifth Amendment guarantees of due process extend to aliens in deportation proceedings, entitling them to a full and fair hearing." *Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001) (citations omitted). We review de novo alleged due process violations in removal hearings. *Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998) (citing *Ivezaj v. INS*, 84 F.3d 215, 220 (6th Cir. 1996)). Peci must also show proof of prejudice to establish a due process violation. *Warner v. Ashcroft*, 381 F.3d 534, 539 (6th Cir. 2004). Reviewing an alleged due process

violation is a two-step inquiry. We must determine whether: (1) there was a defect in the removal proceeding; and (2) the alien was prejudiced because of it. *Vasha,* 410 F.3d at 872.

Peci challenges the fairness of her immigration hearing on several different grounds. We explain in turn why each lacks merit.

### 1. IJ Bias

Peci challenges the credibility findings because the IJ was allegedly biased against her. Pet. Br. at 39. She states that the IJ attempted "to find any reason she could jury-rig [sic] to deny the claims" and that "[m]ost of the problems perceived by the Immigration Judge were a result of her own efforts to put the testimony in a bad light." *Id.* Peci further argues that the IJ took advantage of cross-cultural misunderstandings to deprive Peci of a fair hearing. *Id.* at 33-37. In Peci's appeal to the BIA, however, she failed to raise any of these arguments. *See* J.A. at 10-17. Because Peci failed to exhaust her administrative remedies on these arguments, we may not consider them here for the first time. *Ramani v. Ashcroft,* 378 F.3d 554, 560 (6th Cir. 2004) ("[O]nly claims properly presented to the BIA and considered on their merits can be reviewed by this court in an immigration appeal.").

### 2. Translation Errors

Next, Peci argues that the interpreter's translation errors at her hearing violated her due process rights. Most of Peci's arguments about the translation are interwoven with her bias arguments. These arguments similarly fail.

At the end of the hearing, Peci's attorney challenged the interpreter's translation. J.A. at 112-13. Since the hearing was over when Peci raised this issue, the IJ sent a recording of the hearing to a translation evaluation service. *Id.* at 118-19. In the past, we have remanded based on a faulty translation. *See Amadou v. INS*, 226 F.3d 724, 728 (6th Cir. 2000). In *Amadou*, however, "the

interpreter's faulty translation likely played a significant part in the judge's credibility determination." *Id.* at 727. The plaintiff in *Amadou* also submitted an affidavit explaining how the translation errors led to the IJ's adverse credibility determination. *Id.* at 727-28. Peci did not file an affidavit with specific citations to the problems in the transcript (as the IJ invited her to), nor did she link the translation errors to the disposition of her case. Therefore, Peci fails to show that she was unduly prejudiced by the translation errors.

### 3. Exclusion of Evidence

Finally, Peci argues that the IJ's exclusion of exhibits that would prove her involvement with the Legality Party denied her due process.[6] Pet. Br. at 51-54. Peci attempted to submit a Legality Party membership card and a letter from the Legality Party at the hearing on December 27, 2004. J.A. at 112. On December 23, 2004, just four days before her initial appearance in front of the IJ, she also attempted to submit re-translations of certain documents. *Id.* at 63-64. The IJ cited the Local Rule that all documents had to be submitted within fourteen days of the hearing and refused to admit the evidence. *Id.* at 64-65, 112; *see* Immigration Court of Detroit Local Operating Procedure 2(C)(1) (http://www.asylumlaw.org/docs/united_states/Detroit_MI_LR.pdf). IJs have the power to set and enforce their own deadlines. *Cabrera-Ramos*, 233 F. App'x at 453 (citing 8 C.F.R. § 1003.31(c)).

Peci relies heavily on *Georgis v. Ashcroft*, where the Seventh Circuit applied Ninth Circuit law and held that it was error for the IJ to exclude a letter corroborating the petitioner's testimony where "the IJ expressly stated that it was for lack of corroborating evidence like this letter that he found [the

---

[6]     It is not clear whether Peci raised this argument before the BIA. The BIA did not address the exclusion of exhibits in its opinion. Giving Peci the benefit of the doubt, we read her broad argument to the BIA that "[t]he immigration judge did not consider important evidence in the record" to include this challenge. J.A. at 18-19.

petitioner] not credible and denied her asylum application." 328 F.3d 962, 969 (7th Cir. 2003) (citing

*Khan v. INS*, 237 F.3d 1143, 1144 (9th Cir. 2001)). Even if we were inclined to adopt the reasoning

of the Seventh and Ninth Circuits, the BIA here pointed to numerous inconsistencies that led to its

adverse credibility determination. The lack of corroboration alone did not lead to the denial of Peci's

petition.

Regardless, proof of Peci's involvement with the Legality Party would not prove that her

political affiliation caused the persecution. *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004)

(citations omitted). Peci needed to provide more than membership to show that her involvement in the

Legality Party caused the attacks against her and her family. Since the IJ followed the local rules and

because Peci has not proven actual prejudice, no due process violation occurred.

C.

On August 14, 2007, Peci filed a motion to remand this case to the BIA and on July 11, 2008,

she updated it with a status report. *See* Mot. to Remand; Supp. Mot. Peci's petition for an I-130 alien

relative visa was approved on November 16, 2007, and she has filed for an adjustment of status. Supp.

Mot., Exs. A, B. She believes that she is *immediately* eligible for an immigrant visa and asks that we

remand her case to the BIA to consider this development.[7] In other words, Peci believes that the BIA

will grant her petition for withholding of removal because she now has a lawful path to residency.

We must deny Peci's motion because we have no statutory authority to remand her case. *Fang*

*Huang*, 523 F.3d at 656. The INA provides that "'the court of appeals shall decide the petition only on

the administrative record on which the order of removal is based.'" *Id.* (quoting 8 U.S.C. §

_____

[7]    Peci is incorrect. She is not immediately eligible for an adjustment of status because it could
take many years before she actually receives her visa. *See Muka v. Baker*, 559 F.3d 480, 482 (6th
Cir. 2009) (explaining the current eight-year backlog between petition approval and visa issuance).

1252(b)(4)(A)).  Indeed, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 "explicitly revoked our authority to remand to the BIA for the taking of additional evidence."  *Id.* (quoting *Xiao Xing Ni v. Gonzales*, 494 F.3d 260, 264-65 (2d Cir. 2007)).  Now, when an alien discovers new information after the BIA has finalized deportation proceedings, the proper procedure is for the alien to move the BIA to reopen the proceedings.  8 C.F.R. § 1003.2(c)(1).

At the time Peci's petition for her I-130 was approved, she was time-barred from filing a motion to reopen on the basis of that approval, unless she filed the motion jointly with the government.  8 C.F.R. § 1003.2(c)(2) (motion to reopen "must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened.").  The government declined to do so.  Supp. Mot. Ex. D.

Here, the BIA issued its final decision on July 17, 2006, and Peci's visa petition was approved on November 16, 2007.  J.A. at 4; Supp. Mot. Ex. A.  Thus, the visa petition was not before the BIA and is not part of the administrative record.  We must deny Peci's motion to remand.

III.

For these reasons, we deny the petition for review and the motion to remand.

-14-