NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0004n.06

No. 17-4029

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

KARIDJA CISSE,

    Petitioner,

v.

MATTHEW G. WHITAKER, Acting Attorney
General,

    Respondent.

)
)
)
)
)
)
)
)
)
)
)

FILED

Jan 04, 2019
DEBORAH S. HUNT, Clerk

ON PETITION FOR REVIEW
FROM THE UNITED STATES
BOARD OF IMMIGRATION
APPEALS

---

BEFORE: CLAY and GRIFFIN, Circuit Judges; ZOUHARY, District Judge.[*]

PER CURIAM.

Petitioner Karidja Cisse, a native and citizen of Ivory Coast, seeks review of the Board of Immigration Appeals' denial of her request for cancellation of removal. The petition is **DISMISSED IN PART** and **DENIED IN PART**.

### BACKGROUND

Cisse first entered the United States without authorization in 1993. Since then, she has filed three applications for asylum. This appeal relates to the third application. After an interview with an asylum officer concerning that application, Cisse was placed in removal proceedings. Cisse conceded removability, but applied for several forms of relief, including asylum and withholding and cancellation of removal.

---

[*]The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

**First Hearing**

The Immigration Judge (IJ) held a hearing in May 2009. Cisse testified, as did Mamarouda Fofana (or "Mike," Cisse's oldest son born in the United States) and Gloria May Williams-Cage (a friend) on Cisse's behalf. At the outset of the hearing, the IJ acknowledged that Cisse's previous asylum applications confused him somewhat. The IJ then asked questions to ensure he understood the "complete . . . procedural situation."

Cisse's testimony took up the bulk of the hearing. She shared that she has five children, including two sons born in the United States. At the time of the hearing, those sons were eleven and nine. Although the children's primary language is English, Cisse testified that "[t]hey speak D[i]oula, which is from [her] country." She told the IJ that "[m]edically they are okay" and they do not have any learning disabilities. Cisse also described her relationship with the children's father. Although the father lives in the same city, Cisse sees him "very rare[ly]." The father does not pay any formal child support but does provide Cisse with some financial assistance.

Counsel for the Department of Homeland Security (DHS) and the IJ questioned Cisse extensively about her several asylum applications and discrepancies between those applications. At one point, the IJ was confused about the paternity of Cisse's five children. And at another, the IJ was confused by a comment that Cisse had "two mothers." The IJ asked follow-up questions until this confusion was resolved.

The testimony from the remaining witnesses was brief. Mike testified that his mother "does everything" for him and that he could not live without her. He "sometimes" sees his father. Williams-Cage testified that she helped Cisse purchase her first house in the United States and that Cisse had never been in trouble with the law.

**First Decision**

The IJ denied Cisse's applications for asylum and withholding of removal, but granted her application for cancellation of removal. As for the former, the IJ found Cisse "not credible" because "[h]er three applications for asylum submitted over time c[ould not] be reconciled with one another." As for the latter, the IJ found it was "a close case," but Cisse demonstrated the requisite hardship. The IJ concluded the "humanitarian factors and the hardship to the children" outweighed the factors favoring denial.

**Remand and Second Hearing**

DHS appealed to the Board of Immigration Appeals (Board). The Board remanded the case for "further fact-finding and analysis" as to (1) whether Cisse's United States-citizen children would go to Ivory Coast with Cisse; (2) the role of the father in the children's lives and his status in the United States; and (3) the children's abilities in Cisse's native language. The IJ then held a second hearing in 2012. Due to the IJ's previous credibility determination, Cisse declined to testify. She presented only one witness—her now fourteen-year-old son, Mike.

Mike did not know where his father lived or how to spell his name. But he described their relationship as a "regular relationship, nothing really special." Mike explained that he sees his father about once per month—typically on "[s]pecial occasions," such as holidays, birthdays, or weekends. He saw his father more frequently in 2009, at the time of the first hearing. Mike did not know if his father regularly gave Cisse any money, but he believed Cisse paid the bills. DHS counsel asked Mike if he knew his father owned the business where his mother worked, and Mike responded he did not.

As for language skills, Mike confirmed that he and his younger brother read and write only in English. Although he originally denied speaking his mother's native language, he later

acknowledged he can understand and speak several phrases. He also recognized that his mother sometimes speaks to him in her native language—he "understand[s] what she says," but finds it difficult to respond because he doesn't know the language "real good." When asked if his brother speaks any languages besides English, Mike responded, "No, sir, same as me."

Finally, Mike testified that he has never been to Ivory Coast and does not wish to live there. But if his mother were removed to Ivory Coast, he stated he would go with her.

**Second Decision**

Again recognizing that this was not "an easy case to decide," the IJ changed course after the second hearing and denied Cisse's application for cancellation of removal. The IJ found the children "will probably go to Ivory Coast with their mother," but "the situation may be very different when [Cisse] is actually ordered removed." The IJ determined the father's role was "to basically support the children through [Cisse]'s employment and to be present on regular visits and special occasions." The IJ noted the "father has made every effort . . . to support" the children, but "[Cisse's] spite directed at [him] . . . and her own unwillingness to cooperate" caused much of the distance in the relationship.

The IJ distinguished this case from *In re Gonzalez Recinas*, 23 I&N Dec. 467 (BIA 2002), because the applicant in that case had "no other means to support the children and had no contact with their father." Here, the father was not completely absent from the children's lives. The IJ found the children had "sufficient contacts with their father that the likelihood is that they would remain in the United States" with him after Cisse's removal. The IJ further determined that Cisse was "not worthy of a favorable exercise of discretion" because his previous negative credibility assessment "in reality infects all [of her] applications."

**Appeal to Board**

Cisse appealed, challenging the IJ's hardship determination. The Board agreed with the IJ that this case was distinguishable from *In re Gonzalez Recinas* because Cisse "works in a braiding salon owned by the father" and the "children have sufficient contacts with their father such that they could remain in the United States" with him. The Board concluded that although the children "would no doubt experience hardship as a result of their separation from their mother if they remain here," that hardship would not be exceptional or extremely unusual because "their half-siblings and their father live in the United States."

The Board also denied Cisse's application on an alternative ground: even if the children joined Cisse in Ivory Coast, Cisse failed to show her removal "would cause the degree of hardship required for cancellation of removal." The children are in good health and do not suffer from any learning disability. Further, they "speak English and have some understanding of Dioula." Although the children might not have the same "economic and educational advantages" in Ivory Coast, the Board could not conclude that Cisse would be "unable to provide for them there." "[F]or all the foregoing reasons," the Board held that Cisse failed to demonstrate she was eligible for cancellation of removal.

## DISCUSSION

Cisse challenges the Board's hardship determination under 8 U.S.C. § 1229b(b)(1)(D). The "hardship decision is a discretionary one" that "generally lies beyond our jurisdiction." *Aburto-Rocha v. Mukasey*, 535 F.3d 500, 503 (6th Cir. 2008). This Court retains jurisdiction, however, to address colorable "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D).

Where, as here, the Board issues its own decision rather than summarily affirming the IJ, we review the Board's decision as the final agency determination. *Fang Huang v. Mukasey*, 523 F.3d 640, 652 (6th Cir. 2008). But we may also review the IJ's opinion "to the extent that the B[oard] adopted it." *Harmon v. Holder*, 758 F.3d 728, 732 (6th Cir. 2014).

**Challenges to Factual Findings**

Cisse contends this Court has jurisdiction because the IJ committed legal error by "inject[ing] facts into the hardship analysis" or mischaracterizing record evidence. Although legal error may occur "where material facts have been 'totally overlooked' or 'seriously mischaracterized,'" this Court has cautioned "that such arguments may be 'nothing more than a challenge to . . . discretionary and fact-finding exercises cloaked as a question of law.'" *Navarro v. Holder*, 505 F. App'x 441, 445 (6th Cir. 2012) (alteration in original) (citations omitted).

First, Cisse challenges the IJ's finding that she caused the estranged relationship between her children and their father. But the Board did not rely on or adopt this finding. Thus, the finding is not part of the "final agency determination" before this Court. *See Fang Huang*, 523 F.3d at 652. In addition, Cisse failed to raise this challenge before the Board. She also failed to raise any claim that the IJ considered outside evidence. "[T]his Court is without jurisdiction to consider unexhausted claims." *Khalili v. Holder*, 557 F.3d 429, 433 (6th Cir. 2009) (citing 8 U.S.C. § 1252(d)(1)). Because the spiteful-relationship finding is not part of the final agency determination, and because Cisse failed to exhaust this challenge, we are precluded from reaching this issue.

Cisse argues that, even if the Board did not rely on the spiteful-relationship finding, it still "consider[ed] the level of contact" between the children and their father in concluding they could remain in the United States with him. She contends the Board "latched on" to Mike's testimony

that he had a "regular" relationship with his father and ignored qualifying testimony that the relationship was not so substantial. But Mike testified that he saw his father on a monthly basis. Although Cisse may disagree that this testimony was sufficient to show the children could live with their father, neither the Board nor the IJ seriously mischaracterized testimony or totally overlooked facts in reaching that conclusion. This argument "simply challenge[s] the B[oard] and IJ's discretionary assessment and weighing of facts" and therefore lies outside our jurisdiction. S*ee Navarro*, 505 F. App'x at 446.

Next, Cisse challenges the finding that the "father provides support to" Cisse and her children "by allowing [Cisse] to work at the salon which he owns." It is unclear how the IJ and Board concluded the father owned the salon. But even if this finding were unsupported, it does not undermine the Board's ultimate hardship determination. This finding—like all other factual findings Cisse disputes—concerns the children's relationship with their father. But the Board made an independent and alternative finding that Cisse failed to demonstrate the requisite hardship *regardless* of that relationship, and assuming the children would join her in Ivory Coast. Cisse's only challenge to this finding is that the Board "total[ly] mischaracteriz[ed]" evidence in finding the children have "some understanding of Dioula." But Cisse testified that her sons speak Dioula, and Mike admitted he has some understanding of the language. Again, although Cisse presents this as a legal challenge, in reality she asks this Court to reweigh evidence—an inquiry beyond our jurisdiction.

**Due Process Challenges**

Cisse argues she was denied due process because (1) the IJ was in a "perpetual state of confusion" throughout the first hearing, and (2) the IJ "harbored bias and hostility toward" her. She contends the bias was demonstrated by the IJ's aggravation with her during the first hearing,

his extension of the adverse credibility finding after the second hearing, and his finding that Cisse was to blame for her children's estranged relationship with their father. But, again, Cisse failed to raise these challenges before the Board. Although Cisse admits she did "not expressly stat[e] a due process violation" to the Board, she contends her notice of appeal captured "the essence" of her current claims. We disagree.

"[An] alien must raise correctable procedural errors to the B[oard]" to preserve them for this Court's review. *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006). This includes claims that an IJ was biased or abandoned his or her role as a neutral decision maker. *See, e.g.*, *Peci v. Holder*, 379 F. App'x 499, 506 (6th Cir. 2010); *Aichai Hu v. Holder*, 335 F. App'x 510, 515 (6th Cir. 2009). Because Cisse failed to exhaust her administrative remedies, we lack jurisdiction to review these claims.

Cisse asks this Court to remand to allow the Board to address her unexhausted due process claims; that request is denied. Even if the due process challenges were before this Court, those claims fail on their merits. To establish a due process violation, Cisse must show "error *and* substantial prejudice. . . . [W]e will not simply presume prejudice." *Gishta v. Gonzales*, 404 F.3d 972, 979 (6th Cir. 2005) (emphasis added) (citation omitted)

The record does not support Cisse's contention that the IJ was perpetually confused throughout the first hearing. And even assuming—without deciding—that there was a defect due to the IJ's alleged confusion or bias, neither "materially affected the outcome of [Cisse's] case." *Mapouya v. Gonzales*, 487 F.3d 396, 416 (6th Cir. 2007). The Board stated an independent ground as to why Cisse failed to demonstrate the requisite hardship. This ground did not implicate the IJ's challenged findings, and Cisse fails to raise any colorable challenge to this independent

determination. *Cf. Viuda De Mejia v. Sessions*, 691 F. App'x 245, 249–50 (6th Cir. 2017). Cisse therefore fails to demonstrate substantial prejudice.

## CONCLUSION

For these reasons, we **DISMISS IN PART** and **DENY IN PART** the petition for review.