NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0080n.06
Filed: February 2, 2009

No. 07-4463

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| LARISA ANATOLYEVNA PENYAZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW OF A |
| | ) | FINAL ORDER OF THE BOARD OF |
| MARK FILIP, Acting Attorney General of the United | ) | IMMIGRATION APPEALS |
| States,* | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

Before: SUHRHEINRICH, GRIFFIN, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Petitioner Larisa Anatolyevna Penyaz, a 33-year old native of the former U.S.S.R. and a citizen of Uzbekistan, petitions for review of the Board of Immigration Appeals' denial of her application for asylum and other relief. We deny the petition.

I.

In 2002, Penyaz rented her in-laws' home to American soldiers who were in Uzbekistan as part of a post-9/11 deployment. According to Penyaz, the Uzbek secret police—the "SNV"—learned of the arrangement and repeatedly interrogated Penyaz regarding her relationship with the Americans. She also alleges the SNV interrogated—and, on one occasion, beat—her husband.

---

*Pursuant to Fed. R. App. P. 43(c)(2), Acting Attorney General Mark Filip is automatically substituted for former Attorney General Michael B. Mukasey.

Penyaz first left Uzbekistan for the United States on February 8, 2003. She did not seek asylum during her five-month stay here, and returned to Uzbekistan in the summer of 2003 to care for her ailing mother. In testimony before an Immigration Judge (IJ), Penyaz claimed that the SNV again interrogated her upon her return, asking about "where we were, who we saw and what the military personnel were doing in America." She also claimed they presented her with an ultimatum: return to America and spy on Uzbek émigrés on behalf of the SNV, or be imprisoned. Penyaz says she was given a week to consider the demand, but never got back to them.

Months after the one-week deadline, Penyaz used an exit visa to leave Uzbekistan. She re-entered the United States on November 6, 2003, as a nonimmigrant visitor for pleasure, authorized to remain until May 4, 2004. On February 4, 2004, she filed an affirmative application for asylum and withholding of removal with the Department of Homeland Security (DHS). On the application form, Penyaz claimed that she feared persecution in Uzbekistan because of her race and nationality, but said that neither she nor her family members had ever been detained or interrogated abroad. She appended a personal statement in which she described facing mistreatment due to her mixed Russian and Uzbek heritage, explained her arrangement with the American soldiers, and claimed that, for one meeting with the SNV, she "decided not to go to their offices but they came and got me, as if I were a criminal." She did not mention being asked to spy for the SNV under threat of imprisonment. DHS denied her application.

Penyaz remained in the United States, and on December 16, 2004, DHS issued her a Notice to Appear (NTA) before an IJ. The NTA charged Penyaz with being subject to removal for overstaying her visa, in violation of section 237(a)(1)(B) of the Immigration and Nationality Act, 8

U.S.C. § 1227(a)(1)(B). On August 30, 2005, Penyaz appeared before the IJ and conceded removability, but re-filed for asylum and withholding of removal—including as grounds for relief that she would be persecuted based on her political opinion and membership in a particular social group. She again did not mention the spying ultimatum, and appended the same personal statement to her second application as she did to her first.

On November 15, 2005, Penyaz testified before the IJ. She offered three explanations for omitting the SNV's final threat of imprisonment from her asylum applications: first, the threat was made after her first trip to America; second, each asylum application was prepared by a different attorney; and third, she expected to testify about the threat in court. Penyaz further testified that she traveled to each meeting on her own, and explained that her contrary assertion in her personal statement—that the SNV "came and got me, as if I were a criminal"—was due to a translation error.

On April 26, 2006, the IJ issued a decision in which he found Penyaz not credible, and thus ineligible for relief. Consequently, the IJ ordered Penyaz removed to Uzbekistan. Penyaz appealed the IJ's decision to the Board of Immigration Appeals (BIA), which affirmed and dismissed the case on November 15, 2007.

This petition for review followed.

## II.

### A.

Before being eligible for asylum, an applicant must first qualify as a refugee. *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003). A refugee is someone who "is unable or unwilling to return to . . . [her] country because of persecution or a well-founded fear of persecution on account of race,

religion, nationality, membership in a particular social group, or political opinion[.]" 8 U.S.C. § 1101(a)(42)(A). The applicant bears the burden of proving refugee status, and her testimony, "if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 208.13(a).

We review an adverse credibility determination for substantial evidence, *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004), and will uphold the determination "unless any reasonable adjudicator would be compelled to conclude to the contrary[.]" 8 U.S.C. § 1252(b)(4)(B). An adverse credibility determination must be based on matters going to the "heart of an asylum applicant's claim, not based on an irrelevant inconsistency." *Hamida v. Gonzales*, 478 F.3d 734, 736 (6th Cir. 2007) (internal quotation marks omitted). Because the BIA supplemented the IJ's ruling with its own comments, we review both decisions. *Elias v. Gonzales*, 490 F.3d 444, 449 (6th Cir. 2007).

B.

Here, the IJ and BIA principally relied on three inconsistencies in Penyaz's testimony as the basis for the adverse credibility determination. First, neither of Penyaz's written applications mentioned that the SNV demanded, under threat of imprisonment, that she spy on Uzbek émigrés in the United States. "Like affirmative inconsistencies, omissions may form the basis of an adverse credibility determination, provided that they are substantially related to the asylum claim." *Liti v. Gonzales*, 411 F.3d 631, 637 (6th Cir. 2005). This allegation lay at the heart of Penyaz's fear of persecution; and we do not think the IJ or BIA was compelled to accept her explanations for omitting it.

Second, Penyaz's assertion in her personal statement that the SNV "came and got me, as if I were a criminal," conflicted with her testimony before the IJ that the SNV never came and got her for a meeting at all. This inconsistency too went to the heart of her application, and the IJ and BIA were not compelled to accept her explanation of translator error. Indeed, the BIA noted that Penyaz claimed at one point to have reviewed the statement with the interpreter, yet later testified that the translated statement was never read back to her. In any event, we have held that "it takes more [than a plausible explanation] to overcome an adverse credibility determination. If the IJ's contrary interpretation is not unreasonable, it supports an adverse credibility finding." *Shkabari v. Gonzales*, 427 F.3d 324, 330 (6th Cir. 2005) (internal quotation marks omitted).

Third, notwithstanding Penyaz's failure to sign a spy agreement, the SNV neither invalidated her exit visa (which they knew about) nor prevented her from leaving Uzbekistan in November of 2003. The IJ and BIA properly considered this inconsistency in determining that Penyaz was not credible. *See, e.g.*, *Hamida*, 478 F.3d at 737 n.5.

### III.

Substantial evidence supports the adverse credibility determination made by the IJ and BIA. We therefore deny the petition.