NOT RECOMMENDED FOR PUBLICATION
File Name: 09a0709n.06

No. 08-3847

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
**Nov 02, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| BOTIR RAKHMATILLAEV, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW FROM THE |
| v. | ) | BOARD OF IMMIGRATION APPEALS |
| | ) | |
| ERIC H. HOLDER, JR., Attorney | ) | |
| General, | ) | OPINION |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**Before: GILMAN and GRIFFIN, Circuit Judges; and STEEH, District Judge.**[*]

**RONALD LEE GILMAN, Circuit Judge.** Botir Rakhmatillaev, a native and citizen of Uzbekistan, entered the United States in June 2004 on a student visa. He filed an application nine months later for asylum, withholding of removal, and protection under the Convention Against Torture (CAT), claiming political and religious persecution in Uzbekistan based on his being a Muslim and a critic of the government. An Immigration Judge (IJ) conducted a hearing on the case and denied Rakhmatillaev's application, finding that Rakhmatillaev was not credible. The Board of Immigration Appeals (BIA) affirmed the IJ's decision, and Rakhmatillaev has appealed. For the reasons set forth below, we **DENY** Rakhmatillaev's petition for review.

---

[*]The Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

-1-

**I. BACKGROUND**

Rakhmatillaev, who was born and raised in Uzbekistan, worked for an insurance company there. He also worked part-time at a marketplace. Rakhmatillaev's wife works at a government child-care facility that his youngest child attends, and his oldest child is in public school.

According to Rakhmatillaev, he was making a speech to a group of people in May 2003 at his marketplace. As part of this speech, Rakhmatillaev allegedly criticized the Uzbek government and the police. He claims that the police overheard his speech, arrested him, and jailed him for three days. During these three days, Rakhmatillaev was allegedly beaten, harassed, and warned not to behave in such ways in the future. Six months later, Rakhmatillaev sought and obtained an exit visa from the government and then, in June 2004, acquired a student visa to come to the United States. He left Uzbekistan that same month.

At some point after leaving Uzbekistan, Rakhmatillaev's wife informed him that police officers had come by their home and inquired about his whereabouts. This caused Rakhmatillaev to believe that he would endanger himself and his family if he returned to Uzbekistan.

Rakhmatillaev applied for asylum on March 25, 2005. His application did not mention that he had allegedly been jailed for three days and beaten after criticizing the Uzbek government. After submitting his application, Rakhmatillaev had an interview with an asylum officer, where the two closely reviewed Rakhmatillaev's application and Rakhmatillaev had the opportunity to make changes to it. No changes were made to the application at that time.

In December 2005, Rakhmatillaev received a Notice to Appear from the Immigration and Naturalization Service, seeking to remove him from the United States for failing to comply with the

conditions of his student visa. Rakhmatillaev appeared before the IJ and conceded removability. A final hearing on Rakhmatillaev's asylum application was held in January 2007, with Rakhmatillaev and his attorney appearing before the IJ via video conferencing.

On the day of Rakhmatillaev's final hearing, he and his attorney advised the IJ that Rakhmatillaev's asylum application form should be amended to reflect his alleged arrest, detention, and beating by the police in May 2003. Rakhmatillaev testified that he had told the asylum officer who interviewed him in 2005 about the incident, but that he had experienced language difficulties with the translator assisting the officer. In addition, Rakhmatillaev submitted a letter from his wife corroborating his claim that the police had inquired about his whereabouts. The letter, however, did not mention the alleged arrest, detention, and beating in 2003. Rakhmatillaev explained to the IJ that his wife was afraid to write about the incident.

At the end of the hearing, the IJ delivered an oral opinion in which he found Rakhmatillaev not credible. This caused the IJ to deny Rakhmatillaev's application for asylum, withholding of removal, and protection under the CAT. The IJ's adverse credibility determination was based primarily on the discrepancy between Rakhmatillaev's testimony and his initial asylum application, as well as his wife's failure to mention Rakhmatillaev's alleged detention in her letter. Noting that Rakhmatillaev could point to no other adverse events, that his family has suffered no retaliation from the Uzbek government, and that he had lived in Uzbekistan without incident for over a year after his alleged detention, the IJ also concluded that even if Rakhmatillaev had been deemed credible, he had failed to show that he was persecuted by the authorities in Uzbekistan, that he had a "well-founded

fear of persecution" if he were returned to Uzbekistan, or that he would likely be tortured upon his return.

Following Rakhmatillaev's appeal, the BIA affirmed the IJ's decision. It concluded that the IJ's assessment of Rakhmatillaev's credibility was not clearly erroneous given Rakhmatillaev's "failure to include the 2003 arrest and detention in his application, and the fact that the incident was not mentioned in the letter by [his] wife," and it rejected Rakhmatillaev's suggestion that "translation problems" caused the alleged oversight. The BIA also concluded that Rakhmatillaev had not demonstrated a well-founded fear that he "would be persecuted or that it is more likely than not that he would be tortured upon his return." This timely appeal followed.

## II. ANALYSIS

### A.      Standard of review

"Because the BIA adopted the IJ's decision with additional commentary, we review the decision of the IJ, as supplemented by the BIA, as the final administrative order." *Ceraj v. Mukasey*, 511 F.3d 583, 588 (6th Cir. 2007). Questions of law involving immigration proceedings are reviewed de novo. *Ali v. Ashcroft*, 366 F.3d 407, 409 (6th Cir. 2004). The IJ's factual findings, on the other hand, including a determination that the petitioner failed to establish eligibility for asylum or withholding of removal, will not be disturbed if substantial evidence supports such findings. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (holding that the factfinder's rulings will be upheld if "supported by reasonable, substantial, and probative evidence on the record considered as a whole" (citation omitted)).

Under this standard, we will not reverse a factual determination of the IJ unless we find "that the evidence not only supports a contrary conclusion, but *compels* it." *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004) (emphasis in original). The relevant portions of the REAL ID Act of 2005, Pub. L. 109-13, 119 Stat. 231, do not apply to this case because Rakhmatillaev filed his application for asylum, withholding of removal, and other relief before the May 11, 2005 effective date of the Act. *See Yang Lin v. Holder*, 320 F. App'x 428, 432 n.3 (6th Cir. 2009) (noting that the REAL ID Act expands the subjects that an IJ can consider when making a credibility determination).

**B.      The statutory framework**

Under Section 1158 of the Immigration and Nationality Act (INA), 8 U.S.C. § 1158(b), the U.S. Attorney General has discretion to grant asylum to a refugee. The disposition of an application for asylum involves a two-step inquiry: (1) whether the applicant qualifies as a "refugee" as defined in 8 U.S.C. § 1101(a)(42)(A), and (2) whether the applicant "merits a favorable exercise of discretion by the Attorney General." *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir. 1994) (citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 428 n.5 (1987)).

Section 1101(a)(42)(A) of the INA defines a "refugee" as an alien who is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." An applicant may therefore establish eligibility for asylum by showing that he or she (1) has suffered past persecution, or (2) has a well-founded fear of future persecution. 8 C.F.R. § 208.13(b). The burden is on the applicant to establish that he or she qualifies as a refugee. 8 C.F.R. § 1208.13(a).

If credible, the applicant's testimony "may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 1208.13(a).

Once the applicant shows that he or she has suffered past persecution, the applicant is presumed to have a well-founded fear of future persecution. *Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir. 1998). This presumption can be rebutted by the government "only through establishing by a preponderance of the evidence that since the persecution occurred, conditions in the applicant's country have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted if he were to return." *Id.* (citation and internal quotation marks omitted).

**C. The IJ's credibility finding**

The IJ's oral opinion contains a thorough analysis of Rakhmatillaev's application, but primarily focuses on Rakhmatillaev's credibility. Most importantly, the IJ stressed that he did not believe the allegations about Rakhmatillaev's 2003 arrest, detention, and beating—the core of Rakhmatillaev's asylum claim.

The IJ based this determination on several factors. First, the IJ noted that Rakhmatillaev's description of the alleged event was sparsely detailed and therefore vague. Second, he stressed the last-minute nature of Rakhmatillaev's allegation. Rakhmatillaev had not mentioned his alleged arrest, detention, and beating on his asylum application, or when he reviewed the application with a translator present during his asylum interview. The IJ found that Rakhmatillaev gave "no convincing explanation" for failing to mention the 2003 incident until the day of the hearing in 2007.

Third, the affidavit provided by Rakhmatillaev's wife in support of his application also failed to mention his alleged arrest, detention, and beating. Rakhmatillaev claimed that his wife was afraid

to bring up the incident, but the IJ rejected this explanation after noting that her letter described the police coming by their home to look for Rakhmatillaev, and reasoning that if she was not afraid to write of the police's visit, then she would not have been fearful of mentioning the incident. After discrediting Rakhmatillaev's account, the IJ determined that because Rakhmatillaev had identified no other events that would support his asylum claim, he had "clearly and without a doubt" not established past persecution.

The IJ further noted that, without the alleged 2003 arrest, detention, and beating to rely on, Rakhmatillaev had no facts to demonstrate that he had a well-founded fear of future persecution in Uzbekistan. Indeed, the IJ determined that Rakhmatillaev's own behavior demonstrated that he had no fear of persecution, pointing out that Rakhmatillaev waited for over a year after his alleged arrest to request a visa to come to the United States. The IJ reasoned that if Rakhmatillaev had truly been detained and beaten and was afraid of additional persecution, he would have sought a visa much sooner. Similarly, the IJ determined that "[i]t is not at all likely that the Government of Uzbekistan would have given him an exit visa six months after he was detained if they had any reason to be concerned about him or to be focused on him." The IJ also noted that Rakhmatillaev was not involved in politics in Uzbekistan or the United States, that his wife worked at a government-owned child-care center, and that his children were being publicly educated. Yet none of Rakhmatillaev's family members have suffered any repercussions because of his alleged behavior. Finally, the IJ stressed that Rakhmatillaev had not been sure whether he was even going to apply for asylum when he arrived in the United States on his student visa.

The IJ's factual findings are supported by substantial evidence. Rakhmatillaev presented just one alleged instance of persecution and brought it up, for the first time, on the day of his final hearing. Although Rakhmatillaev argues that he did not understand the asylum application, and that translator difficulties during his interview prevented him from correcting his application at an earlier date, this court has previously held that an IJ is "not compelled to accept [the applicant's] explanation of translator error." *Penyaz v. Filip*, 308 F. App'x 985, 988 (6th Cir. 2009). An applicant must present "more than a plausible explanation to overcome an adverse credibility determination. If the IJ's contrary interpretation is not unreasonable, it supports an adverse credibility finding." *Id.* (quoting *Shkabari v. Gonzales*, 427 F.3d 324, 330 (6th Cir. 2005) (internal alteration omitted)). Furthermore, Rakhmatillaev had retained counsel by May 23, 2006, and the final hearing on his asylum application was not until January 12, 2007. He and his counsel thus had more than six months during which they could have corrected his application, which makes the delay in doing so even more suspicious and his explanation for the delay less plausible.

Additional facts in the record support the IJ's credibility finding. As the IJ noted, Rakhmatillaev's description of his alleged persecution is not detailed; he states only that he "was expressing opinion about persecution and about authorities and what they are doing, and they took me" and, "after beating and harassing and intimidating for three days, they told me [] don't continue doing such things and they released me." An asylum applicant's failure to provide a "believable, consistent, and sufficiently detailed" account of persecution or any corroborating evidence of persecution, "where it is reasonable to expect [such] evidence," undermines an asylum application. *See Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004) (internal quotation marks omitted).

Finally, Rakhmatillaev testified that his motivation for coming to the United States was "to learn the English language for [] my business." But later in his testimony, Rakhmatillaev contradicted himself by saying that he had intended to apply for asylum when he left Uzbekistan. This discrepancy further supports the IJ's credibility determination. *See Guisse v. INS*, 107 F. App'x 564, 566 (6th Cir. 2004) (noting that contradictory testimony provides "another basis for an adverse credibility finding").

An IJ's credibility finding is a factual determination that should not be reversed unless the evidence compels a contrary conclusion. *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004). In the present case, given the inconsistencies in Rakhmatillaev's testimony and behavior, the evidence does not "compel" a contrary conclusion. *See* 8 U.S.C. § 1252(b)(4)(B); *Zhao v. Holder*, 569 F.3d 238, 247 (6th Cir. 2009) ("[T]he BIA's determination should be upheld unless evidence not only supports a contrary conclusion, but indeed *compels* it." (internal quotation marks omitted) (emphasis in original)).

Because the IJ's adverse-credibility determination is supported by substantial evidence, we need not reach the issue of whether the IJ properly denied Rakhmatillaev's asylum application on the alternative grounds that even if Rakhmatillaev was credible, he had no reasonable basis to fear future persecution in Uzbekistan. Rakhmatillaev's other claims—for withholding of removal and protection under the CAT—are similarly without merit because they each require an applicant to meet an even higher burden of proof than is needed to establish an asylum claim. *See Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (withholding of removal); *Ali v. Reno*, 237 F.3d 591, 597 (6th Cir. 2001) (protection under the CAT).

## VI. CONCLUSION

For all of the reasons set forth above, we **DENY** Rakhmatillaev's petition for review.