**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0467n.06

No. 09-3989

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Aug 03, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| MOHAMED HASSAN ABDI, | ) | |
| | ) | |
| **Petitioner,** | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE BOARD OF |
| v. | ) | IMMIGRATION APPEALS |
| | ) | |
| ERIC H. HOLDER, JR., ATTORNEY | ) | |
| GENERAL | ) | **O P I N I O N** |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

Before:  BOGGS, SILER, and MOORE, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.**  Mohamed Hassan Abdi, a native and citizen

of Somalia, petitions this court for review of an order of the Board of Immigration Appeals ("BIA")

denying his application for asylum, withholding of removal, and protection under the Convention

Against Torture ("CAT").  For the following reasons, we **DISMISS** the petition for review as to

Abdi's asylum claim and **DENY** his petition for review with regard to his claims for withholding

of removal and CAT relief.

**I.  FACTS & PROCEDURAL BACKGROUND**

**A.  Factual Background**

Abdi was born in Afgoi, Somalia in 1966 and is a member of the minority Geledi ethnic

group.  After finishing high school in 1984, Abdi began working as a truck driver for the Somalian

government.  Following the commencement of the civil war in 1991, Abdi and his family began

experiencing problems at the hands of the Hawiye and Darod ethnic groups, two of the dominant clans in the country. In June 1991, Hawiye militiamen (members of the United Somali Congress ("USC")) arrived in Afgoi; shot and killed Abdi's father, wife, and six-month old daughter; and proceeded to loot his home. Abdi was working at a nearby farm when the attack occurred, but he ran toward the house at the sound of the gun fire and arrived only after his family had been murdered. Although the perpetrators were already leaving in their vehicles by time he arrived, Abdi testified that he was able to identify them as Hawiye. Following the murders, Abdi grew increasingly concerned for his life and within the month fled with his surviving family members to Kismayo, Somalia where they lived for some time selling fruit and vegetables. Ultimately, in late 1991 or early 1992, Abdi and his family moved to a refugee camp in Kenya.

During his time in Kenya, Abdi eventually met a smuggler who agreed to help him enter the United States. Leaving his two surviving children and his mother in the refugee camp, Abdi and the smuggler boarded a plane from Nairobi to the United States and allegedly landed at New York's John F. Kennedy International Airport ("JFK") sometime on the evening on July 28, 2000. Abdi testified that at the port of entry the smuggler gave him a passport to present to U.S. officials but reclaimed the passport once Abdi cleared immigration and customs, thereby leaving Abdi with no documentation of his inspection and admission. Following their successful entrance into the country, the two men purportedly took a taxi cab from New York to Boston where Abdi hoped to find relatives and friends. According to Abdi, he was unable to contact anyone he knew in Boston but discovered that he had friends in Atlanta, Georgia. That same evening, Abdi stated that he boarded

a bus to Atlanta where he stayed with a friend, Aziz Farah, from the date of his arrival in Atlanta until February 2003, when he moved to Ohio.

**B. Procedural History**

Abdi originally filed his application for asylum, withholding of removal, and relief under CAT on August 25, 2000. In 2004, the Department of Homeland Security ("DHS") issued Abdi a Notice to Appear ("NTA"), which Abdi apparently never received. He was ordered removed in absentia on December 6, 2006. In April 2007, however, an Immigration Judge ("IJ") granted Abdi's motion to reopen his immigration proceedings, and, with the assistance of counsel, Abdi reasserted his intent to pursue his claims for asylum, withholding of removal, and CAT relief in June 2007. Also with the help of counsel, on December 7, 2007, before his merits hearing, Abdi submitted amendments to his 2000 asylum application. Because Abdi lacked English fluency, he testified that although he did not write the contents of either the 2000 asylum application or the 2007 amendments, he was involved in their preparation. Specifically, Abdi testified that the preparers of both documents read the documents to him in his native tongue and that Abdi confirmed that the information contained therein was accurate before they were submitted.

At the hearing before the IJ, Abdi testified in support of his application and recounted his experiences in Somalia, focusing in particular on the death of his family in Afgoi. When both counsel and the IJ confronted Abdi with several major discrepancies between his testimony and his written asylum applications, which are discussed in more detail below, Abdi claimed that his memory was faulty because of post-traumatic stress. One of Abdi's family friends also testified at

the hearing, confirming that Abdi was a member of the Geledi ethnic group and that he had heard that Abdi's father had been killed, although the friend provided no details concerning the incident. The Government then called Abdi's then-current wife to testify, who corroborated Abdi's testimony that he had frequent memory lapses. Ultimately, the IJ found that Abdi was "not a credible witness" and refused to credit his testimony concerning both his date of entrance to the United States and his tale of his experiences in Somalia before arriving in the United States. Administrative Record ("A.R.") at 54 (IJ Oral Decision). The IJ concluded that Abdi's testimony was "paramount" because of the lack of supporting evidence, *id.*, but because Abdi was wholly incredible, he failed to meet his burden to show that his application for asylum was timely and that he was eligible for either withholding of removal or relief under CAT.

On appeal, the BIA agreed with the IJ's determination that Abdi had failed to establish that his asylum application was timely filed. Turning to the IJ's adverse credibility finding, the BIA affirmed the IJ's conclusion that Abdi was not a credible witness and determined that although Abdi's testimony about the general turmoil in Somalia was not inconsistent with the documentary evidence, the evidence of "the general country conditions d[id] not sufficiently meet [Abdi's] burden of proof for either withholding of removal or protection under the Convention Against Torture." A.R. at 4 (BIA Op.). The BIA also rejected Abdi's argument that the IJ should have granted him a continuance to obtain more evidence to corroborate his testimony, noting that Abdi never requested a continuance, had "not explain[ed] what evidence he would have submitted[] if he had been given additional time, or why any additional evidence was not previously presentable or discoverable prior

4

to his merits hearing." *Id.* The BIA dismissed Abdi's appeal, and Abdi timely petitioned this court for review.

## II. ANALYSIS

Abdi makes several claims before this court. First, he argues that the agency's determination that he failed to file his application for asylum in a timely manner violated his right to procedural due process because the IJ's and BIA's decisions "lack[ed] clear findings." Pet. Br. at 8. Second, Abdi asserts that the adverse credibility determination was not supported by substantial evidence. Third, Abdi claims that the conclusion that he failed to establish eligibility for withholding of removal and CAT relief is also not supported by substantial evidence. Fourth, in recognition that additional evidence may have bolstered both his credibility and his offer of proof, Abdi argues that the IJ violated his right to procedural due process by failing to grant him a continuance *sua sponte* in order to allow Abdi to procure such evidence. For the following reasons, we conclude that all of Abdi's claims are without merit.

## A. Standard of Review

In cases where the BIA adopts and supplements the IJ's decision, such as the instant case, we review the opinion of the IJ in conjunction with the BIA's additional comments and discussion. *See Bi Feng Liu v. Holder*, 560 F.3d 485, 490 (6th Cir. 2009). "We review the IJ's and BIA's findings for substantial evidence and may reverse only if the decision was 'manifestly contrary to law,' 8 U.S.C. § 1252(b)(4)(C), that is, if the evidence 'not only supports a contrary conclusion, but indeed *compels* it,'" *Haider v. Holder*, 595 F.3d 276, 281 (6th Cir. 2010) (quoting *Ouda v. INS*, 324

F.3d 445, 451 (6th Cir. 2003)). As the conclusion regarding whether an applicant is credible is a finding of fact, we review an adverse credibility finding under this same substantial-evidence standard. *Hamida v. Gonzales*, 478 F.3d 734, 736 (6th Cir. 2007). "Although an adverse credibility finding is given substantial deference, the finding must be supported by specific reasons and[,]" in cases filed prior to the effective date of the REAL ID Act, "must be based on issues that go to the heart of the applicant's claim, rather than 'irrelevant inconsistenc[ies].'" *Diallo v. Holder*, 364 F. App'x 992, 995 (6th Cir. 2010) (unpublished opinion) (quoting *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004)). We have emphasized that "[i]f a discrepancy cannot be viewed as an attempt by the applicant to enhance his claims of persecution, then it has no bearing on credibility." *Diallo*, 364 F. App'x at 995 (citing *Singh v. Ashcroft*, 398 F.3d 396, 402 (6th Cir. 2005)).

**B. Asylum Claim**

Pursuant to 8 U.S.C. § 1158(a), absent changed circumstances, an applicant for asylum must "demonstrate[] by clear and convincing evidence that" he or she filed the application "within [one] year after the date of the [individual's] arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). We lack jurisdiction to review the agency's timeliness determination when the petitioner's "'appeal seeks review of discretionary or factual questions.'" *Fang Huang v. Mukasey*, 523 F.3d 640, 650 (6th Cir. 2008) (quoting *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006)). "'[W]hen the appeal seeks review of constitutional claims or matters of statutory construction,'" however, our jurisdiction is not affected. *Id.* (quoting *Almuhtaseb*, 453 F.3d at 748).

In the instant case, the BIA affirmed the IJ's determination that Abdi had failed to present sufficient evidence to establish that he filed his application for asylum within one year of entering the United States. The IJ specifically held that "[t]he only evidence" that Abdi "presented to establish the date of [his] arrival in the United States" was his own testimony, and because Abdi was not credible, his testimony alone was insufficient to carry his burden.[1] A.R. at 53 (IJ Oral Decision). Although this is the type of determination over which we generally possess no appellate jurisdiction, Abdi attempts to argue that he is seeking review of a statutory or constitutional error by claiming that the IJ's and BIA's untimeliness decisions "violated his statutory right to a fair hearing and his

---

[1]In concluding that Abdi's testimony related to his entry date was not credible, the IJ relied on several facts. First, the IJ noted that Abdi claimed that he arrived at JFK in the evening, took a taxi cab to Boston, and arrived in Boston before dark. The IJ believed it "just not credible" that Abdi would have taken a taxi for the almost four-hour trip from New York City to Boston, and, even assuming that he did take a taxi, the IJ did not believe that Abdi could have left New York City in the evening and arrived in Boston before dark. A.R. at 59 (IJ Oral Decision). Second, the IJ relied on the fact that although Abdi claimed that the same day he arrived in the United States—July 28, 2000—he boarded a bus to Atlanta where he purportedly resided with a friend for the next three years, that friend, Aziz Farah, submitted an affidavit that contradicted Abdi's time line. Farah stated that Abdi "liv[ed] with [him] during the period of 8/20/2001 to 2/12/2003," A.R. at 198 (Farah Aff.), which was a period that began almost one year after Abdi purportedly arrived in the United States and traveled to Atlanta.

Abdi's contention that these inconsistencies could not serve as the basis for finding his application untimely because they involved events that occurred *after* he actually entered the country is baseless. These facts clearly formed part of Abdi's arrival story, and the IJ was entitled to disbelieve him. This is particularly the case given Abdi's inability to convey a consistent account of any aspect of the basis for his claim for relief, as will be discussed in more detail below. *See, e.g.*, *Seng v. Holder*, 584 F.3d 13, 18 (1st Cir. 2009) ("Should the IJ reasonably determine that the alien's testimony is not credible, he may disregard it *in whole* or in part." (emphasis added)).

constitutional right to procedural due process" because their opinions "were confusing and lacked clear administrative findings." Pet. Br. at 26.

Abdi's attempt to recast his claim in a statutory or constitutional light by clouding the record fails. It is true that this court held in *Gjyzi v. INS*, 386 F.3d 710 (6th Cir. 2004), that where the IJ or the BIA make "a legal error in the course of making [a timeliness] determination" appellate review will not be foreclosed, but the instant case is markedly different from *Gjyzi*. *See id.* at 714. Unlike *Gjyzi*, where the BIA's opinion "lack[ed] an actual or divinable reasoned basis," *id.*, the record in the instant case is perfectly clear as to why the agency held Abdi's application untimely: Abdi presented no evidence as to his entry date other than his own testimony, which was wholly unbelievable. Nothing that the BIA says is irreconcilable with this reasoned conclusion. That Abdi's counsel may find the IJ's or BIA's opinions "confusing" does not make them legally deficient. Abdi's challenge to the timeliness determination is nothing more than a claim that the IJ and BIA erred in concluding that his testimony regarding his entrance was not believable and that if the agency had believed him, it would have held that Abdi's application was timely. "Because [Abdi] is arguing a factual error," we "lack[] jurisdiction regarding the timeliness of [his] asylum application." *Diallo*, 364 F. App'x at 995; *see also Bushati v. Mukasey*, 310 F. App'x 883, 885 (6th Cir. 2009) (holding that jurisdiction was lacking to review an IJ's determination that an asylum application was untimely when that determination was based on the fact that "[t]he petitioner offer[ed] no evidence, other than his own testimony" regarding his date of entry). Accordingly, we **DISMISS** Abdi's petition for review of his application for asylum.

8

**C. Claim for Withholding of Removal and CAT Relief**

"To prevail on a petition for withholding of removal under the INA," the petitioner bears the burden to put forth sufficient evidence "that there is a 'clear probability,' that is, that 'it is more likely than not,' that [he or] she would be subject to persecution on the basis of one of . . . five [enumerated] grounds were [he or] she removed from this country." *Almuhtaseb*, 453 F.3d at 749 (quoting *Liti v. Gonzales*, 411 F.3d 631, 640–41 (6th Cir. 2005), and 8 C.F.R. § 1208.16(b)(2)). "By contrast, to be eligible for withholding of removal under the CAT, 'the applicant bears the burden of establishing it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Id.* (quoting *Liti*, 411 F.3d at 641 and 8 C.F.R. § 1208.16(c)(2)).

**1. Adverse Credibility Finding**

Given the limited evidence that Abdi presented in support of his application for relief, Abdi's credibility was critical to the agency's resolution of his petition. The IJ and the BIA both concluded that Abdi was not credible, and although Abdi asserts that the adverse credibility finding was not supported by substantial evidence, we reject Abdi's claim for the following reasons.

To find Abdi unworthy of belief, the IJ relied on several discrepancies between Abdi's oral testimony at the merits hearing and Abdi's written applications for asylum. These were not irrelevant or trivial discrepancies; rather, many of them bore directly upon Abdi's claim that he feared future persecution or torture. For example, when testifying about the day that his father, wife, and daughter were killed—allegedly at the hands of the Hawiye and because of his family's status as Geledi—Abdi testified that he was working on a farm approximately one mile away at the time

9

of the attack, that he was "not there when [his family members] were shot," and that he arrived on the scene when his family was already deceased. A.R. at 92 (Abdi Test.). In his asylum application, however, Abdi's statements were to the contrary. He claimed not only that he was present when his wife and daughter were shot, but he also stated that he, himself, was nearly killed as a result of the USC militiamen's gunfire and was forced to throw himself on the ground in order to avoid the spray of bullets. A.R. at 180 (Asylum Application). An additional discrepancy involved the harm that his mother allegedly faced at the hands of the USC during the attack. Abdi testified before the IJ that his mother had managed to escape the violence of the militiamen, A.R. at 94 (Abdi Test.), but this statement directly contradicted the claim in his asylum application that at the time of the shooting his "mother had been beaten with the butt of a rifle" by the Hawiye. A.R. at 186 (Asylum Application).

Another inconsistency that the IJ rightly found problematic was Abdi's testimony concerning a gunshot wound to his leg. At the hearing, Abdi testified that prior to leaving Afgoi to live in Kismayo he was shot in the foot by the Hawiye "owner of the farm" where he worked because he was not working fast enough and the owner became frustrated with him. A.R. at 100 (Adbi Test.). His asylum application stated, however, that after arriving in Kismayo, "one of the Darod militiamen shot [him] in the leg" because he had refused to perform work for him. A.R. at 186 (Asylum Application). Moreover, Abdi had also claimed in his application for asylum that he had suffered "constant[] abuse[]—both physical[] and verbal[]," *id.* at 186, at the hand of the Darod in Kismayo and was essentially living as a slave. But at the hearing before the IJ, Abdi made no mention of this

10

abuse. Instead, when asked about his stay in Kismayo and whether he had been held against his will by anyone while there, Abdi merely stated that "the same USC that murdered [his] father [had] . . . captured the city." A.R. at 98 (Adbi Test.); *see Liti*, 411 F.3d at 637 ("Like affirmative inconsistencies, omissions may form the basis of an adverse credibility determination, provided that they are substantially related to the asylum claim.").

Again, these discrepancies are not minor or irrelevant inconsistencies that fall outside of the heart of Abdi's claim such that they should have no impact on his credibility. Instead, they bear directly upon the severity of the harm that Abdi suffered in Somalia and the identity of the individuals who inflicted that harm, which necessarily implicates the alleged actors' motivations and calls into question the genuineness of the entirety of Abdi's application for relief from removal.[2] *See, e.g.*, *Peci v. Holder*, No. 06-4063, 2010 WL 2232295, at *3 (6th Cir. June 3, 2010) (unpublished opinion) (noting that testimony with "inconsistent descriptions of the men who" committed an act of persecution constituted "a crucial contradiction"); *Garcia-Morales v. Holder*, No. 09-3439, 2010

---

[2]Abdi attempts to downplay the inconsistencies between his testimony and his asylum application by ignoring these large-scale contradictions and discussing only the minor contradictions that the IJ also noted. Although it is true that the IJ expressed concern over some discrepancies that may not be sufficient to sustain an adverse credibility finding on their own—for example, whether Abdi stated that he was shot in the leg versus the foot or whether his family lived in one house or two adjoining houses—Abdi fails to appreciate the impact of the larger-looming discrepancies between his testimony and his asylum application, and the IJ's mention of minor inconsistencies does not defeat the adverse credibility finding generally. *See, e.g.*, *Vasha v. Gonzales*, 410 F.3d 863, 869 (6th Cir. 2005) ("In this case, though several of the inconsistencies identified by the IJ were unsupported and the implausibilities were based on mere speculation, we conclude that review of the record as a whole does not compel a contrary result.")

WL 2161792, at *3 (6th Cir. May 28, 2010) (unpublished opinion) (finding the failure to mention in testimony before the IJ that alleged persecutors had "abused and killed innocent people in [the petitioner's] presence and forced him to perform manual labor" when those facts were included in the asylum application amounted to "significant discrepancies" that went to the "heart of [the] claim").

In fact, at his hearing, Abdi recognized that the discrepancies were problematic, and he attempted to explain their source by claiming that the trauma of seeing his father, wife, and daughter killed meant that his "memory [wa]s not very good." A.R. at 112 (Abdi Test.). He additionally explained that he would become "mentally disturbed" upon thinking about what had happened in Somalia and forget many things. *Id.* Although Abdi alleges that the IJ "did not adequately acknowledge [his] . . . explanation" for his divergent statements, Pet. Br. at 19, this claim is completely belied by the record. Upon hearing Abdi's explanation, the IJ specifically addressed Abdi's statements and concluded that while "[h]aving trouble with one's memory is understandable, relating versions of a particular event that are this [disparate] indicates to the Court that . . . one is making up facts in order to fill either his testimony at trial or the asylum application." A.R. at 59 (IJ Oral Decision). In other words, the IJ made clear that he did not believe that Abdi had an "understandable" case of memory loss where he was perhaps unable to recall particular details or events and, as a result, gave incomplete or vague statements concerning those circumstances upon which his claim was based. Instead, Abdi explained key occurrences in Somalia in two different and irreconcilable manners, which indicated to the IJ not that Abdi simply could not remember what

12

happened but that one set of Abdi's statements was entirely false. *Cf. N'Diom v. Gonzales*, 442 F.3d 494, 499 (6th Cir. 2006) ("Neither the Immigration Judge nor the Board explain[ed] why they disbelieve[d] th[e] explanation for the earlier omission of details covering . . . persecution [the petitioner] suffered."). Unfortunately for Abdi, "it takes more [than a plausible explanation] to overcome an adverse credibility determination." *Shkabari v. Gonzales*, 427 F.3d 324, 330 (6th Cir. 2005). And because "the IJ's contrary interpretation" of Abdi's inconsistent statements was "not unreasonable, it supports an adverse credibility finding." *Id.* (internal quotation marks and alteration omitted); *see also Penyaz v. Filip*, 308 F. App'x 985, 988 (6th Cir. 2009) (unpublished opinion) (concluding that "the IJ and BIA were not compelled to accept [the petitioner's] explanation of translator error" for an inconsistency that went to the heart of the petitioner's claim).

Abdi also attempts to argue that regardless of the fact that the IJ provided him with the opportunity to explain the origin of his inconsistent testimony, the IJ violated his due-process rights by failing *sua sponte* to grant a continuance in order to allow Abdi to procure additional evidence to support his explanation for the discrepancies in his story. Apparently, the premise underlying this argument is that if Abdi had introduced additional evidence documenting his memory problems, the IJ would have been compelled to accept his explanation that the inconsistencies resulted from a medical inability to recall correctly these traumatic events. Abdi's argument proves too much. At no point did Abdi request a continuance to procure additional evidence, and he has pointed to no case law to support his assertion that the IJ had the obligation to suspend the proceedings on his own initiative to allow Abdi to prepare better. We have little sympathy for Abdi's attempt to attribute

his own failings to the IJ in this case. In short, substantial evidence supports the IJ's and BIA's determination that Abdi was wholly incredible, and we are not compelled to conclude otherwise.

## 2. Additional Evidence Not Sufficient for Relief

Given that Abdi did not testify credibly, in order to require reversal of the agency's denial of relief there must be other evidence in the record that by itself compels us to conclude that Abdi would be likely to suffer persecution or torture upon his removal to Somalia such that he warrants either withholding of removal or relief under CAT.[3] Abdi presented documentary evidence in the form of newspaper articles, as well as reports from international human-rights organizations and the U.S. State Department that supported Abdi's general claim that low-caste clans in Somali are, on the whole, politically powerless and are "subjected to killings, torture, rapes, kidnappings for ransom, and looting" at the hands of the dominant clans. A.R. at 259 (U.S. State Dep't Report 2005). There is also no doubt that Abdi's documentary evidence establishes that Somalia is a violent country experiencing a period of severe disorder, instability, and even lawlessness. But "[a]lthough country conditions alone" may establish a likelihood of persecution or torture "even in the absence of credible testimony" in some instances, *Tifow v. Mukasey*, 303 F. App'x 377, 379 n.1 (9th Cir. 2008) (unpublished opinion) (citing *Kamalthas v. INS*, 251 F.3d 1279, 1282–84 (9th Cir. 2001)), as the BIA concluded, this is not such a case. Nothing in Abdi's documentary evidence establishes that "*he*

---

[3]As part of his petition for review before this court, Abdi asserts that the IJ erred in requiring additional corroborative evidence of past persecution because no other corroborative evidence was reasonably available. For the purposes of review we will assume, as did the BIA, that the IJ erred in requiring additional corroborative evidence and that the only evidence available was that which Abdi introduced as part of the record.

will be singled out for persecution as a [Geledi], nor does the evidence in the record compel the

conclusion that there is a pattern or practice of persecution against the [Geledi] as an identifiable

group." *Akhtar v. Gonzales*, 406 F.3d 399, 405 (6th Cir. 2005).[4]  The situation in Somalia is

regrettable, but it cannot form the basis of relief for Abdi in the instant case.

### III.  CONCLUSION

For the reasons set forth above, we **DISMISS** Abdi's petition insofar as it seeks review of

his application for asylum, and we **DENY** the remainder of his petition.

---

[4]Abdi also argues that a remand is warranted because the BIA did not consider his evidence of the general country conditions in Somalia, and he relies on *Mostafa v. Ashcroft*, 395 F.3d 622, 625 (6th Cir. 2005), for this contention.  We disagree.  In the instant case, the BIA expressly concluded that "the general country conditions" did not suffice to meet Abdi's burden for relief, A.R. at 4 (BIA Op.), indicating that it had, in fact, considered those country conditions. *See Nabhani v. Holder*, No. 09-3417, 2010 WL 2587944, at *4 (6th Cir. June 29, 2010) (unpublished opinion) ("[T]he Board's denial of CAT protection did not rest solely on adverse credibility.  Rather, the Board separately found the general reports of country conditions in the record insufficient to merit relief.").  Moreover, although the BIA could have further elaborated on the evidence in its opinion, the BIA need not necessarily examine in detail every piece of evidence "so long as the BIA analyzed and explained the basis upon which it decided against" Abdi, particularly given that the additional evidence does not meaningfully support Abdi's claim. *Bi Feng Liu*, 560 F.3d at 491 n.5; *see also Peci*, 2010 WL 2232295, at *5.  Unlike *Mostafa*, where the Country Reports contained relevant and illuminating information on the petitioner's individualized claim for relief, the U.S. State Department Country Reports for 2005 and 2006 in the instant case do not.  In fact, they make no mention of the Geledi clan in the context of the above-discussed turmoil, and while the Report for 2006 does refer to the "Geledle" clan, which it states is a subclan of the "Rahanweyn" clan, A.R. at 233 (U.S. State Dep't Report 2006), Abdi testified before the IJ that "the Rahanweyn clan" was "another tribe, another group" and that it was "not . . . the same as" the Geledi.  A.R. at 128 (Abdi Test.).