**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0687n.06

No. 12-4305

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Jul 25, 2013*
DEBORAH S. HUNT, Clerk

YAO SHI,                                     )
                                             )
      **Petitioner,**                     )        ON PETITION FOR REVIEW
                                             )        OF A FINAL ORDER OF THE
v.                                           )        BOARD OF IMMIGRATION
                                             )        APPEALS
ERIC H. HOLDER, JR., United States           )
Attorney General,                            )
                                             )        **O P I N I O N**
      **Respondent.**                     )
_____      )

**Before:  MOORE, CLAY, and WHITE, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.**  Yao Shi sought asylum or withholding of

removal to her native China in light of that country's family-planning policies.  An immigration

judge ("IJ") denied Yao Shi relief, and the Board of Immigration Appeals ("BIA") affirmed the

decision.  We **DENY** Yao Shi's petition for review.

**I.  FACTS AND PROCEDURE**

The United States admitted Yao Shi as a non-immigrant student from China on September

20, 2011.  A.R. at 173 (Hr'g Tr. at 38).  Although initially enrolled at the University of California,

Riverside, Yao Shi left school almost immediately and moved to New York.  *Id.* at 174 (Hr'g Tr. at

39).  The Department of Homeland Security ("DHS") apprehended Yao Shi in Michigan on February

25, 2012, at which point she was charged with being removable.  Yao Shi conceded removability

and filed an application for asylum, withholding of removal under the Immigration and Nationality

Act ("INA"), and withholding of removal under the Convention Against Torture ("CAT") in light

of her alleged persecution under China's family-planning policies.

At a hearing before the IJ, Yao Shi testified that, because she had become pregnant while

unmarried in China, the local family-planning council forced her to terminate the pregnancy. A.R.

at 179–80 (Hr'g Tr. at 44–45). She testified that, subsequently, the family-planning council

attempted to force her to undergo a procedure to have an intrauterine device ("IUD") implanted, but

that Yao Shi's mother successfully prevented the family-planning counsel from taking Yao Shi to

the procedure. *Id.* at 223–25 (Hr'g Tr. at 88–90). Yao Shi testified that she left China seven months

later, having never undergone an IUD procedure. *Id.* at 217–18 (Hr'g Tr. at 82–83). During the

hearing, DHS identified several discrepancies between Yao Shi's testimony and the documents she

had provided in support of her application. Yao Shi had provided letters from both her mother and

her then-boyfriend, both of whom remained in China, to corroborate her account. However, whereas

Yao Shi testified that the family-planning council appeared once at her house to take her to her IUD

procedure—and that the family-planning council was unsuccessful in its endeavor—both letters

stated that the family-planning council appeared twice, and that the council was rebuffed on its first

visit alone. A.R. at 345–46 (Letter from Mother at 1–2); A.R. at 356 (Letter from Boyfriend at 2).

Contrary to Yao Shi's testimony, then, each letter stated that Yao Shi underwent an IUD procedure

prior to leaving China. When confronted with these discrepancies, Yao Shi claimed that both letters

had been mistranslated. A.R. at 222–23, 226 (Hr'g Tr. at 87–88, 91). Meanwhile, hospital records

provided by Yao Shi regarding her terminated pregnancy identified her age as twenty-two, whereas

Yao Shi had stated that she was twenty at the time. *Id.* at 230 (Hr'g Tr. at 95); *see* A.R. at 324 (Medical Rs. at 1).

The IJ denied Yao Shi's application for asylum and withholding of removal. In particular, the IJ found implausible Yao Shi's explanations of the discrepancies between her testimony and the record evidence, A.R. at 122–23 (IJ Oral Decision ("Oral Dec.") at 28–29), and made an adverse-credibility finding against her, *id.* at 126 (IJ Oral Dec. at 32). The IJ then found that the evidence provided, particularly in light of Yao Shi's lack of credibility, did not support a finding of either past persecution or a fear of future persecution. *Id.* at 126–28 (IJ Oral Dec. at 32–34). Accordingly, the IJ found that Yao Shi had failed to meet her burden of proof with respect to asylum or withholding of removal under the INA. Separately, the IJ found that Yao Shi was not entitled to protection under the CAT. *Id.* at 128–29 (IJ Oral Dec. at 34–35).

The BIA affirmed the IJ's decision in a separate opinion. A.R. at 2 (BIA Op. at 1). The BIA concluded that at least four discrepancies between Yao Shi's testimony and the evidence in the record supported the IJ's adverse-credibility finding, *id.* at 2–3 (BIA Op. at 1–2), and determined that evidence in the record "did not independently satisfy [Yao Shi's] burden of proof" with respect to her credibility, *id.* at 3 (BIA Op. at 2). In light of her lack of credibility, the BIA agreed with the IJ that Yao Shi could not establish that she had suffered past persecution. *Id.* The BIA further concluded that Yao Shi's fear of future persecution was speculative because she had obtained an exit visa from China—thus indicating that the Chinese government does not have "a continuing interest in her"—and because neither her family nor her then-boyfriend had been subjected to subsequent

harm related to Yao Shi's departure. *Id*. Accordingly, the BIA upheld the denial of asylum and withholding of removal under the INA. Finally, the BIA concluded that Yao Shi had not provided evidence establishing that it was more likely than not that she would be subject to state-sanctioned torture upon return to China, and that the mere existence of family-planing policies in China was insufficient to satisfy Yao Shi's burden of proof. *Id.* Yao Shi timely petitioned for review. Yao Shi also filed a motion to stay her removal pending our consideration of her petition, which we denied in an order on December 14, 2012.

## II. STANDARD OF REVIEW

"Where the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, we review the BIA's decision as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). We review de novo legal determinations made by the BIA. *Id*. We review factual findings, including an adverse-credibility finding, under a substantial-evidence standard, whereby we uphold the administrative decision if "it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole,'" *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)), and will reverse only if "any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B).

## III. ANALYSIS

An applicant bears the burden of establishing her eligibility for relief from removal. 8 U.S.C. § 1158(b)(1)(B)(i) (asylum); § 1231(b)(3)(C) (withholding of removal under INA); 8 C.F.R.

4

§ 1208.16(c)(2) (withholding of removal under CAT). An applicant's testimony may by itself satisfy her burden of proof, provided "that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant" is eligible for relief. § 1158(b)(1)(B)(ii). An applicant who is found not to be credible may nevertheless qualify for relief if there is evidence in the record sufficient to meet her burden of proof. *See, e.g.*, *Djadjou v. Holder*, 662 F.3d 265, 275 (4th Cir. 2011) ("Despite an adverse credibility determination, applicants for asylum can establish past persecution through independent evidence."), *cert. denied*, — U.S. —, 133 S. Ct. 788 (2012). The applicable burden of proof an applicant must satisfy depends on the form of relief sought. With respect to asylum, the applicant must prove *inter alia* that she qualifies as a refugee, which means demonstrating "'persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Ndrecaj v. Mukasey*, 522 F.3d 667, 674 (6th Cir. 2008) (quoting 8 U.S.C. § 1101(a)(42)); *cf. INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987) ("One can certainly have a well-founded fear of an event happening when there is less than a 50% chance of the occurrence taking place."). An applicant who establishes that she suffered past persecution is entitled to a rebuttable presumption of a well-founded fear of future persecution. *Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005). With respect to withholding of removal under the INA, the applicant "must show that there is a clear probability, that is, that it is more likely than not, that she would be subject to persecution on the basis of one of these five grounds were she removed from this country." *Almuhtaseb v. Gonzales*, 453 F.3d 743, 749 (6th Cir. 2006) (internal quotation marks omitted). Finally, with respect to withholding of removal under the

CAT, an applicant must show that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2).

Yao Shi's petition for review focuses almost entirely on the BIA's adverse-credibility finding. The BIA identified four inconsistencies with respect to Yao Shi's testimony: first, Yao Shi initially testified to one encounter with the family-planning council, whereas the letters from her mother and boyfriend identified two encounters; second, Yao Shi denied that she had undergone an IUD procedure in China, whereas both letters stated that she underwent the procedure after her second encounter with the family-planning council; third, Yao Shi testified that she feared discussing her pregnancy with her family, but her mother's letter stated that Yao Shi and her mother discussed the pregnancy; and fourth, Yao Shi testified to being twenty at the time of these incidents, but hospital records she provided indicated that she was twenty-two. A.R. at 2–3 (BIA Op. at 1–2).

Yao Shi first argues that many of the identified inconsistencies do not go to the heart of her claims for asylum or withholding, and so should not have been used to make an adverse-credibility finding against her. However, Yao Shi filed her application for asylum and withholding after May 11, 2005, and so her application is subject to the REAL ID Act amendments to the INA. *See Amir v. Gonzales*, 467 F.3d 921, 925 n.4 (6th Cir. 2006) (noting that the relevant provision of the REAL ID Act "applies to aliens who applied for asylum, withholding of removal, or other relief on or after May 11, 2005"). Among other things, the REAL ID Act replaced the requirement that an inconsistency go to the heart of a claim with the following framework for assessing credibility:

> Considering the totality of the circumstances, and all relevant factors, a trier of fact
> may base a credibility determination on the demeanor, candor, or responsiveness of

the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, *without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim*, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii) (emphasis added). Accordingly, Yao Shi's argument that the BIA should not have considered various inconsistencies in her testimony because they did not go to the heart of her claim is unavailing.

Yao Shi next argues that the specific discrepancies between her testimony and the letters provided by her mother and her then-boyfriend can be explained by the fact that the letters were mistranslated. Both the IJ and the BIA rejected this explanation as implausible. A.R. at 2–3 (BIA Op. at 1–2); A.R. at 122–23 (IJ Oral Dec. at 28–29). A reasonable adjudicator would not be compelled to conclude the contrary. Yao Shi testified that the family-planning council appeared at her home in order to take her to undergo an IUD procedure, but that her family successfully resisted. Both letters describe the same event occurring, but then state that the family-planning council subsequently returned several days later and succeeded in taking Yao Shi to undergo an IUD procedure. When asked to explain this inconsistency during cross-examination, Yao Shi for the first time testified that the family-planning council had visited twice, but claimed that the letters were mistranslated regarding the outcome of the second visit. Given the specificity of description available in the letters, the letters' consistency with each other, and the fact that each letter states

multiple times that Yao Shi underwent an IUD procedure, a reasonable adjudicator would not be compelled to accept Yao Shi's claim of mistranslation. *Cf. Rakhmatillaev v. Holder*, 351 F. App'x 25, 29 (6th Cir. 2009) ("[A]n IJ is not compelled to accept the applicant's explanation of translator error." (alterations and internal quotation marks omitted)). Accordingly, we conclude that the BIA's adverse-credibility finding was supported by substantial evidence.

In light of the adverse-credibility finding, reasonable adjudicators would not be compelled to conclude that the BIA erred in determining that Yao Shi failed to establish either that she had suffered past persecution or that she had a well-founded fear of future persecution sufficient to merit asylum. With respect to past persecution, the BIA concluded that Yao Shi "did not establish past persecution" in light of her "lack of credibility." A.R. at 3 (BIA Op. at 2). Although she states in her petition that "the BIA did not address Petitioner's claim of past-persecution," Pet'r's Br. at 11, Yao Shi does not explicate or even identify the nature of her past-persecution claim, nor does she identify an error in the BIA's conclusion. "'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *Dugboe v. Holder*, 644 F.3d 462, 470 (6th Cir. 2011) (quoting *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005)). With respect to a well-founded fear of future persecution, the BIA concluded that Yao Shi's fear is speculative because the Chinese government has not demonstrated a continued interest in her. Yao Shi asserts that the BIA did not consider "any of the substantial evidence that Petitioner has provided to support" her well-founded fear of future persecution, and quotes from the State Department's country report. Pet'r's Br. at 11. However, the BIA's opinion indicates that it

8

considered the country reports and other documents submitted by Yao Shi. *See* A.R. at 3 (BIA Op. at 2) ("The respondent's corroborative evidence, *including background country conditions materials* also did not independently satisfy her burden of proof." (emphasis added)); *id.* (stating, with respect to the CAT, that "the country conditions alone did not satisfy the respondent's burden of proof"). The BIA evidently concluded that these documents alone were insufficient to establish Yao Shi's well-founded fear of future persecution in light of evidence specific to Yao Shi's situation—namely, that the Chinese government granted Yao Shi an exit visa, and that her family and boyfriend have not been harmed by the Chinese government since her departure. A.R. at 3 (BIA Op. at 2); *see Rakhmatillaev*, 351 F. App'x at 29 (upholding an IJ's finding that a petitioner had not established a well-founded fear of persecution where the petitioner received an exit visa six months after the detention that formed the basis for his persecution claim, and where the petitioner's family had not "suffered any repercussions" for his conduct). Particularly in light of the fact that Yao Shi does not challenge the substance of the BIA's conclusion, we cannot conclude that the record compels a contrary conclusion. Accordingly, we deny Yao Shi's petition regarding the BIA's denial of her application for asylum.

Next, with respect to Yao Shi's request for withholding of removal under the INA, the BIA rejected her application for the same reasons that it rejected her asylum application. A.R. at 3 (BIA Op. at 2) ("Since the respondent did not meet her burden of proof for asylum, she cannot meet the more stringent requirements for withholding of removal."). Because substantial evidence supported the BIA's determination that Yao Shi failed to meet her burden of proof for her asylum claim, we

reach the same conclusion regarding the BIA's determination that Yao Shi failed to meet her burden of proof for her withholding of removal claim under the INA. *See Liti v. Gonzales*, 411 F.3d 631, 640–41 (6th Cir. 2005).

Finally, with respect to her claim for withholding of removal under the CAT, Yao Shi asserts without discussion that "Petitioner has provided evidence that there is a clear probability she will suffer torture if returned to China." Pet'r's Br at 13. However, Yao Shi does not identify such evidence in her favor, nor does she offer any argument that the BIA erred in concluding that, "notwithstanding [her] discredited testimony," A.R. at 3 (BIA Op. at 2), Yao Shi failed to provide evidence sufficient to establish that it was more likely than not that she would be tortured. Yao Shi thus has waived any opportunity to challenge the BIA's conclusion with respect to her CAT claim. *See Dugboe*, 644 F.3d at 470. Accordingly, we deny Yao Shi's petition with respect to her withholding-of-removal claim under the CAT.

## IV. CONCLUSION

For the foregoing reasons, we **DENY** Yao Shi's petition for review.